IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2007 JUN 20  A 11: 39

| | |
|---|---|
| SHANNON BURTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:07cv548-MHT |
| ) | |
| ALABAMA DEPARTMENT OF ) | JURY DEMAND |
| AGRICULTURE & INDUSTRIES, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

**COMES NOW** Shannon Burton (Plaintiff), and for her complaint against Alabama Department of Agriculture & Industries and its agents and representatives (Defendant) hereby complains as set forth herein below.

## JURISDICTION

1. This Court has jurisdiction over the litigation herein pursuant to 28 U.S.C. Sections 1331 and 1343, 42 U.S.C., Section 2000e, the 14th Amendment to the Constitution of the United States of America and Retaliation.

2. Plaintiff has fulfilled all conditions precedent to the institution of this action.

## VENUE

3. Defendant is located and/or doing business within this judicial district (Middle District and the Northern Division of Alabama). This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under

1

42 U.S.C. Section 2000(e)-5(f) (3), 28 U.S.C. Section 1391(b), the 14th Amendment to the Constitution of the United States of American and Retaliation.

## PARTIES

4. Plaintiff Shannon Burton, hereinafter referred to as "Plaintiff," is an African-American female resident of the United States, residing in Montgomery County, Alabama. Plaintiff is a resident of this judicial district, and has been employed by Defendant at all times material hereto. Plaintiff is a member of the protected class for race within the meaning of Title VII. Plaintiff is also an employee of Defendant within the meaning of Title VII.

5. Defendant, Alabama Department of Agriculture & Industries, hereinafter referred to as "Defendant" is a state agency and is authorized to do business in the State of Alabama, and employs at least fifteen (15) persons and otherwise meets the jurisdictional prerequisites of Title VII.

## NATURE OF THE CASE

6. This is a lawsuit brought by Plaintiff seeking permanent relief from unlawful discriminating practices by Defendant. Plaintiff has been adversely affected by discrimination involving promotion, compensation, assignments, retaliation, violation of due process, and other terms and conditions of employment as a result of Defendant failing to remedy systemic employment discrimination on the basis of race, due process and retaliation. The practices committed and continuing to be committed by Defendant violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq. ("Title VII").

## **FACTUAL BACKGROUND**

7. Plaintiff first began working for Defendant on or about September 1, 2001.

8. Plaintiff is employed as an ASA III.

9. Plaintiff was summoned to serve as a petit juror in the Circuit Court of Montgomery County from October 24, 2005 through October 28, 2005.

10. Plaintiff returned to work on October 31, 2005.

11. Upon returning to work, Plaintiff discovered mail in her chair and on her desk that had not been opened the entire week she was on jury duty.

12. The unopening of the mail was a major concern to Plaintiff due to the sensitive nature of the mail. Many of the pieces of mail were date sensitive and required immediate attention.

13. Plaintiff proceeded to Lance Hester's (Program Director) office. Mr. Hester is the Plaintiff's immediate supervisor. The Plaintiff asked Mr. Hester, "Are you aware that the mail has not been opened for an entire week?" Mr. Hester responded, "I was under the assumption that Mary Catrett was opening the mail. Plaintiff responded to Mr. Hester that that had not happened. Ms. Catrett was on leave from October 24, 2005 to October 25, 2006 (two of the five days that Plaintiff was on jury duty). However, she was at work for the three remaining days.

14. Plaintiff asked Mr. Hester if he would like to look at the postmark dates on the mail. Mr. Hester told Plaintiff that that was not necessary, but if it would make her happy he would. Plaintiff explained to Mr. Hester that his looking at the mail was not about making her happy; it was about the productivity of the office.

15. Plaintiff stated to Mr. Hester that if she had left the mail unopened for an entire week, a "federal" case would have been made out of the situation.

16. At that time, Plaintiff realized that Mr. Hester had another appointment. Before Plaintiff left Mr. Hester's office she commented, "It does not matter anyway because if this incident ever comes up again about the mail not being opened, you probably would not remember I told you about the postmark dates on the mail of everyday of the week and probably would not tell the truth about the dates." Plaintiff then left Mr. Hester's office.

17. Mr. Hester only met with his appointment for approximately ten (10) minutes. He then came to Plaintiff's desk and stated, "I have a question regarding the last comment you made." Plaintiff then asked Mr. Hester what he would like to know." Mr. Hester asked, "Do you honestly believe that I would not tell the truth about the postmark dates on the mail even if I looked at the mail?" Plaintiff, answered, "Yes, I honestly believe that you would not tell the truth." This was Plaintiff's belief, not an accusation.

18. At that time Mr. Hester asked the Plaintiff to come to his office to see how they could move pass this. Plaintiff agreed. Plaintiff and Mr. Hester spoke for approximately 45 minutes. At no time did Mr. Hester indicate that Plaintiff had a demeanor of insubordination, showed lack of respect for his position, or indicated that Plaintiff's statement demonstrated a failure to submit to authority.

19. To Plaintiff's surprise, there was no further discussion about the unopened mail. Mr. Hester was totally focused on Plaintiff's statement of her opinion.

20. On November 3, 2005, Lance Hester issued a written reprimand and warning to the Plaintiff for her statement of opinion.

21. He indicated in the warning that Plaintiff's behavior was so severe that it warranted immediate attention. He directed Plaintiff to write

a response after signing his warning. Plaintiff was instructed to admit to disruptive behavior, insubordination, failure to submit to authority. She was further directed to admit that her behavior was unacceptable and was advised that similar behavior in the future would result in a reprimand and disciplinary action.

22. Plaintiff did not initially sign this warning.

23. On November 10, 2005, Plaintiff responded to Mr. Hester's written warning.

24. As a result, Plaintiff was issued a second written reprimand and warning and instructed that failure to sign the letter or reprimand and warning would lead to further disciplinary action. Plaintiff signed the warning on November 14, 2005.

25. On November 15, 2005, Plaintiff received a letter of suspension. The letter of suspension was a result of Ron Sparks, Commissioner, upholding Mr. Hester's recommendation. The Plaintiff was suspended from November 21, 2005, through December 2, 2005. Plaintiff was instructed to return to work on December 5, 2005, at 8:00 a.m. The disciplinary action that Plaintiff was subjected to was extremely severe and did not fit the allegations.

26. Plaintiff appealed the suspension on November 18, 2007. Ron Sparks, the Commissioner, immediately began retaliating against the Plaintiff once she filed the appeal.

27. On the same day that Plaintiff filed her appeal, the Commissioner instructed the maintenance workers and prison inmates to tear down the Plaintiff's cubicle. The cubicle had been in Plaintiff's office for almost a year and there was no mention that the cubicle was a problem. There was no reason to tear the cubicle down other than to send Plaintiff a message that he, the Commissioner, was in control. Plaintiff's computer and other work equipment were simply left on the Plaintiff's floor. The office was left in complete disorder.

28. In Plaintiff's appeal she indicated that the Defendant did not give her a reasonable amount of notice for her hearing. Plaintiff was given notice of the hearing at 4:45 p.m. on November 17, 2005, indicating that her suspension hearing would be held on November 18, 2005, at 10:30 a.m. This was clearly a violation of the Plaintiff's procedural due process rights under the Constitution of the United States of America.

29. Per Plaintiff's suspension orders, Plaintiff began serving her suspension on November 21, 2005.

30. On November 22, 2005, the Defendant, Commissioner Sparks, upheld the suspension.

31. In this notice, Plaintiff's suspension days were changed from November 21, 2005 through December 2, 2005, returning December 5, 2005, to November 23, 2005, returning on December 7, 2005. As a result two additional days were added to Plaintiff's suspension. Due to Defendant's error, Plaintiff served twelve (12) days on suspension and had to be given administrative leave to rectify the mistake.

32. In the November 22, 2005, letter upholding Plaintiff's suspension, Plaintiff was notified that she would receive a post-suspension review.

33. On November 30, 2005, Plaintiff received her annual appraisal. Plaintiff received her appraisal while she was on suspension. Plaintiff's appraisal was decreased from a score of "Exceeds Standards" to a score of "Partially Meets Standards" due to the suspension. Alabama State Personnel states that the employer should not begin the "Progressive Discipline" two months prior to the employee's evaluation period. The employee should be evaluated during the entire year. Plaintiff's warning, reprimand and suspension all occurred within a two week time frame (11/3 – 11/15/05). Plaintiff's evaluation was due in December 2006. The

steps that Defendant took were in retaliation for Plaintiff appealing her suspension, which is statutorily protected activity.

34. On December 7, 2005, the Defendant appointed a hearing officer to preside over Plaintiff's review. The Defendant chose an Administrative Law Judge from the Attorney General's Office.

35. On December 13, 2005, Plaintiff received a letter from Lance Hester, with regard to her appraisal and her pending suspension. In said letter Mr. Hester stated, "If the hearing on your appeal of the suspension was not proper, we will change or re-do your evaluation to reflect that decision. Also, if the hearing outcome results in a change in your evaluation that affects step raises, it will be handled in a manner that you would not in any way be penalized monetarily." Even though, Mr. Hester made this promise, it would ultimately have to be approved by the Commissioner, Ron Sparks. On December 15, 2005, the Plaintiff responded to the unfair appraisal.

36. A hearing before the Administrative Law Judge with regard to Plaintiff's suspension was held on February 21, 2006.

37. The Administrative Law Judge's (ALJ) decision was rendered on April 18, 2006. Said ALJ recommended that the suspension of Plaintiff for ten (10) days without pay during November 23, 2005 through December 7, 2005, period be rescinded. It was noted in the recommendation that "This is not a final decision. No rights are finally determined until the Commissioner decides whether to accept, reject, or modify this recommendation." Notwithstanding Mr. Hester's promise on December 13, 2005 - "If the hearing on your appeal of the suspension was not proper, we will change or re-do your evaluation to reflect that decision. Also, if the hearing outcome results in a change in your evaluation that affects step raises, it will be handled in a manner that you would not in any way be penalized," - the Commissioner chose not to stand behind the

promise made by Mr. Hester by accepting the ALJ's recommendation. In fact, the Commissioner took no action whatsoever. He refused to accept, reject or modify the recommendation.

38. More than fourteen (14) months have passed since the final hearing and the Commissioner has refused to accept, reject or modify the ALJ's recommendation. The Commissioner's refusal to act is in retaliation against Plaintiff for appealing his decision.

39. The Commissioner's refusal to accept, reject or modify the ALJ's recommendation was not only retaliation against Plaintiff; he also failed to follow the Defendant's Policy of Progressive Discipline. The policy in part states," Suspension may be appealed in writing to the Commissioner's office within 10 days of the notice. Upon appeal, the Commissioner will appoint a panel or hearing officer to review the action. The Commissioner will not be bound by their recommendations. <u>The Commissioner will inform the employee in writing of these findings and his final decision.</u>" The policy clearly <u>requires</u> that the Commissioner inform the employees in writing of his final decision. The Commissioner has violated the Plaintiff's procedural due process rights by not issuing a final decision.

40. On or about April 10, 2006, the Plaintiff's attorney, Victor R. Spencer, contacted the Defendant and warned the Commissioner about the retaliation that the Plaintiff was being subjected to since she appealed suspension. Among other things, Plaintiff was being followed by the Commissioner. The attorney's advice was not adhered to.

41. On June 23, 2006, Plaintiff, among other black employees, complained to the Alabama State Employee Association that Blacks were being discriminated against by the Defendant. Plaintiff and her black co-workers discussed the hiring and promoting disparity, and the disparity in issuing of state cars.

42. On August 4, 2006, Attorney Spencer wrote the Commissioner a letter requesting that he act on the ALJ's recommendations. The Commissioner took no action despite the attorney's request. The Commissioner's non-action was taken in retaliation of the Plaintiff's appeal of the suspension.

43. In August of 2006, Plaintiff was not placed on the register for the position of Agriculture Marketing Specialists. The reason given to Plaintiff for not being placed on the register was her education. Plaintiff was eligible as the Plaintiff has a master's degree. Plaintiff's name was not added to the register, yet white employees, Lauren Stone and Harold McClendon were added. The Plaintiff was not placed on the register because of her race and in retaliation for her complaint that she was suspended because of her race and her appeal of the Commissioner's suspension.

44. On September 20, 2006, Plaintiff reviewed her personnel file. Plaintiff discovered and Teresa Brunson witnessed that some documents were missing from Plaintiff's file.

45. Plaintiff's duties were changed and her supervisory authority was stripped from her. The removal of Plaintiff's duties was in furtherance of the Commissioner's retaliation against Plaintiff.

46. When Plaintiff's duties were changed policy required that a Form 40 be completed on Plaintiff. This was not done. However, when a white similarly situated employee's duties were changed, Mary Catherine, a Form 40 was completed on her. The difference in the treatment in the employees was based on their race.

47. On or about April 11, 2007, Plaintiff filed a Motion to Enforce the recommendation of the Administrative Law Judge. Again, the Commissioner refused to act. The Commissioner continues to retaliate against Plaintiff for participating in statutorily protected activity when she filed her appeal.

## COUNT ONE

## RACE DISCRIMINATION – TITLE VII

48. Plaintiff adopts realleges and incorporates by reference paragraphs one through forty-seven above, the same as if more fully set herein, and further alleges anew.

49. In taking the above described actions, Defendant intentionally discriminated against Plaintiff on the basis of her race when it did place her on the register for the position of Agriculture Marketing Specialist, but placed two similarly situated white employees on the register and when Defendant refused to complete a form 40 on Plaintiff, but completed one for a similarly situated white employee.

50. As a proximate consequence of the violations of Title VII based on race by Defendant, Plaintiff has suffered and will continue to suffer damage to her professional life and current and future career opportunities. Further, Plaintiff has suffered future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life and non-pecuniary damages.

## COUNT TWO

## RETALIATION

51. Plaintiff adopts realleges and incorporates by reference paragraphs one through fifty above, the same as if more fully set herein, and further alleges anew.

52. In taking the above described actions, Defendant retaliated against Plaintiff, when the Commissioner refused to enforce the ALJ's recommendation, ransacked Plaintiff's office and reduced Plaintiff's appraisal score.

53. As a direct result of the ongoing retaliation against Plaintiff, Plaintiff's constitutional rights have been abridged.

54. As a proximate cause of the Defendant's actions, Plaintiff has been injured and damaged, as set forth in paragraphs above.

## COUNT THREE
## DUE PROCESS (FOURTEENTH AMENDMENT)

55. Plaintiff adopts realleges and incorporates by reference paragraphs one through fifty-four above, the same as if more fully set herein, and further alleges anew.

56. In taking the above described actions, Defendant violated Plaintiff's procedural due process rights when it failed to adhere to the requirements of procedural due process. Procedural Due Process requires the Plaintiff to be given (1) proper and timely notice or the allegations or charges against him or her and (2) an opportunity to present evidence on the matter. Defendant failed to give Plaintiff adequate notice of her appeals hearing and refused to issue Plaintiff a final decision with regard to her suspension.

57. As a direct result of the violation of Plaintiff's procedural due process rights, Plaintiff's constitutional rights have been abridged.

58. As a proximate cause of the Defendant's actions, Plaintiff has been injured and damaged, as set forth in paragraphs above.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Honorable Court grant the following:
    a) Assume jurisdiction over this action;
    b) A judgment declaring that Defendant violated 28 U.S.C. Sec. 1331, 42 U.S.C. Sec. 2000(e), et seq. and Retaliation and Due Process;

c) All backpay and fringe benefits as a result of the 10 day suspension which includes the Plaintiff's two-step raise and all that the Plaintiff would have received during the wrongful suspension;

d) Attorney's fees for Attorney Victor Spencer and Attorney Juraldine Battle-Hodge;

e) All suspension information removed from Plaintiff's personnel file at Agriculture and Industries and Alabama State Personnel.

f) Costs;

g) Prejudgment interest;

h) An award of such compensatory damages for any loss of wages, and loss of benefits, including, but not limited to, retirement pension benefits, mental anguish, emotional distress, and embarrassment, both past, present and future to which the Plaintiff may be entitled; and such further, other and different legal or equitable relief as the Court may deem appropriate or which she may be entitled, and

i) Punitive damages.

## JURY DEMAND

Plaintiff demands trial by jury on each and every cause of action.

Respectfully submitted,

_____
Juraldine Battle-Hodge (BAT033)

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.

_____
OF COUNSEL

PLEASE SERVE DEFENDANT BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED