**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **SHANNON BURTON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:    2:07cv548-MHT** |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | |
| **AGRICULTURE & INDUSTRIES** | ) | |
| | ) | |
| **Defendant.** | ) | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**COMES NOW,** the Defendant Alabama Department of Agriculture & Industries, and submits this Brief in Support of the Motion for Summary Judgment contemporaneously filed herein, and states as follows:

**I.  Introduction**

This is an action for relief under 42 U.S.C. §2000e, et seq., (Title VII).  The plaintiff also purports to bring a procedural due process claim under the Fourteenth Amendment to the United States Constitution.  The plaintiff is employed by the Defendant, Alabama Department of Agriculture as an Administrative Support Assistant III.  She alleges that the defendant discriminated against her on the basis of her race, retaliated against her, and violated her due process rights under the Fourteenth Amendment to the United States Constitution.

**II.  Statement of Undisputed Facts**

Plaintiff, Shannon Burton, became employed with the Alabama Department of Agriculture in September, 2001 as an Administrative Support Assistant in Agriculture Compliance.  (Burton depo. p. 10, l. 5-8; p. 11, l. 9-12; p. 18, l. 15-19).  Her supervisor was Benny Hitch.  (Burton depo. p. 19, l. 6-7).  She was promoted to the position of Administrative

Support Assistant III in 2003. (Burton depo. p. 22, l. 12-21). Ms. Burton received a pay raise with this promotion and was assigned to the Food Safety Division. (Burton depo. p. 22, l. 22 to p. 23 l. 1; l. 14-18). She supervised two employees, Mary Catrett, a white female, and Ann Williams, a black female. (Burton depo. p. 24, l. 13-22; p. 25, l. 13-17). Ms. Burton's supervisor was Lance Hester. (Burton depo. p. 27, l. 2-8). She had, and still has, her own office which is the front suite of two offices, adjacent to the office of her supervisor. (Burton depo. p. 31, l. 22 to p. 32, l. 8). Ms. Burton's current supervisor is Mark Scott; she has reported to him since March, 2006. (Burton depo. p. 34, l. 19 to p. 35, l. 3).

Ms. Burton has everything she needs to perform her job functions, other than her desire for a color printer and a copy machine to be physically located in her office. (Burton depo. p. 32, l. 9-21; p.35, l. 9-12). Ms. Burton has access to these items but would simply prefer to have them in her office. (Burton depo. p. 32, l. 17-19; p. 33, l. 16 to p. 34, l. 3).

In May, 2005, Lance Hester received complaints about Ms. Burton's behavior at work from Mary Catrett and Ann Williams. (Affidavit of Lance Hester). Ms. Catrett and Ms. Williams complained that Ms. Burton often left the office and would instruct them to call her on her cell phone if anyone came looking for her. (Affidavit of Lance Hester). Mr. Hester had independently noticed that when he asked Ms. Catrett or Ms. Williams where Ms. Burton was, they did not know but would attempt to reach her by phone. (Affidavit of Lance Hester).

Both Ms. Catrett and Ms. Williams had expressed concern that if Ms. Burton found out they complained about her, she would retaliate against them. (Affidavit of Lance Hester). Mr. Hester discussed the complaints about Ms. Burton with his supervisor, Dr. John Bloch, and they decided that in order to prevent any further problems in the office, Mr. Hester would take over the supervision of Ms. Catrett and Ms. Williams. (Affidavit of Lance Hester). Mr. Hester

informed Ms. Burton of this transfer of duties in a memo dated May 10, 2005. (Memo dated May 10, 2005 attached to Affidavit of Lance Hester). Ms. Burton's pay was not reduced nor did she lose any benefits. (Affidavit of Lance Hester).

Ms. Burton claims that she was discriminated against on the basis of her race when a Form 40 was not completed for her when her supervisory duties were transferred to Lance Hester. (Doc. 12, para. 45). A Form 40 is a job description for each position. (Burton depo. 157, l. 20-23). She claims that a white employee, Mary Catrett had a Form 40 completed when she was promoted. (Burton depo. p. 158, l. 15-21). The fact that a Form 40 was not completed when some of Ms. Burton's duties were transferred to her supervisor did not affect her rate of pay, employment status, or position with the Department of Agriculture. (Burton depo. p. 161, l. 4-15). The Form 40 simply delineates job responsibilities, and Ms. Burton knew she was not longer supervising other employees. (Burton depo. p. 161, l. 14-19).

In 2004, Ms. Burton wrote a letter to Commissioner Sparks expressing interest in working in what she thought was the nutrition program, which she thought was in development. (Burton depo. p. 46, l. 18-23). Ms. Burton considered such a job to be a promotion. (Burton depo. p. 47, l. 3-4). Although the Department of Agriculture is involved in nutrition projects, it does not have a Nutrition Program. (Affidavit of Lance Hester). There have never been any job openings at the Department of Agriculture for a Nutrition Program. (Affidavit of Lance Hester). Along with Education Superintendent, Dr. Joe Morton, the Commissioner of the Department of Agriculture put together a Nutrition Awareness Project for Alabama schools. (Affidavit of Lance Hester). This involved the development of public relations posters and CDs explaining proper nutrition, and encouraging students to eat more Alabama fruits and vegetables. (Affidavit

of Lance Hester). The Nutrition Awareness Project was not a created program to be staffed with employees. (Affidavit of Lance Hester).

In late October, 2005, Ms. Burton was called to jury duty in Montgomery County, Alabama. (Burton depo. p. 59, l. 6-9). Ms. Burton notified her supervisor, Lance Hester, and her co-workers, Mary Catrett and Ann Williams that she would be out of the office on jury duty. (Burton depo. p. 62, l. 1-4; p. 64, l. 1-13). Ms. Catrett and Ms. Williams knew how to handle the mail in Ms. Burton's absence; she had been absent on previous occasions. (Burton depo. p. 64, l. 14-18). On Tuesday or Wednesday of the week Ms. Burton was on jury duty, she returned to her office on a break and opened up some of the mail on her desk. (Burton depo. p. 61, l. 11-23; p. 62, l. 15-19). Ms. Burton returned to work on Monday, October 31, 2005 and claims to have found unopened mail on her desk. (Burton depo. p. 64, l. 23 to p. 65, l. 3). Ms. Burton did not talk to Mary Catrett or Ann Williams about their failure to open the mail. (Burton depo. p. 12-18). Ms. Burton, instead, went to her supervisor Lance Hester and informed him that the mail had not been opened. (Burton depo. p. 66, l. 21 to p. 67, l. 3). Mr. Hester responded that he thought Ms. Catrett and Ms. Williams had been opening the mail. (Burton depo. p. 67, l. 2-9). Ann Williams was in the office all week and should have been opening the mail in Ms. Burton's absence. (Burton depo. p. 68, l. 18 to p. 69, l. 5). Ms. Burton responded that Mr. Hester could look at the postmarks if he did not believe her. (Affidavit of Lance Hester).

Ms. Burton told her supervisor, Mr. Hester, that if she had left the mail unopened for a week, it would have been "a federal case." (Burton depo. p. 71, l. 15-17). She also accused Mr. Hester of not remembering that she had shown him the postmarks on the mail and said that he would probably not tell the truth about it anyway if the matter came up again[1]. (Burton depo. p. 72, l. 17 to p. 73, l. 4). Ms. Burton's comments were loud, angry, and disruptive. (Affidavit of

---

[1] Mr. Hester contends that Ms. Burton actually said "you would probably lie about it anyway".

Lance Hester). Mr. Hester then sat down with Ms. Burton to talk about her accusatory comments and asked if she honestly believed he would lie about the postmarks on the mail. (Burton depo. p. 75, l. 20 to p. 76, l. 5). She replied that she did believe he would not tell the truth. (Burton depo. p. 76, l. 4-5). For approximately three days, Mr. Hester thought about the best course of action to take in response to Ms. Burton's insubordinate outburst. (Affidavit of Lance Hester). Mr. Hester ultimately determined that the type of behavior Ms. Burton exhibited warranted a written warning because it had been disruptive, disrespectful, unprofessional, and insubordinate. (Affidavit of Lance Hester).

On November 3, 2005, Ms. Burton received a written warning from Mr. Hester for insubordination for the inappropriate way she spoke to him, her supervisor, on October 31, 2005. (Burton depo. p. 78, l. 15-19; Written Warning dated November 3, 2005). Mr. Hester found Ms. Burton's statement to him that he would lie about the mail disruptive, disrespectful, and insubordinate. (Burton depo. p. 81, l. 18-22; Written Warning dated November 3, 2005; Affidavit of Lance Hester). Mr. Hester met with Ms. Burton regarding the written warning, discussed it with her, and gave her an opportunity to read the warning. (Burton depo. p. 79, l. 11-12; p. 82, l. 5-7; Affidavit of Lance Hester). Ms. Burton was given until November 10, 2005 to submit a written response to the warning. (Burton depo. p. 83, l. 15-18). Ms. Burton refused to sign the warning, even though she was instructed to do so by Mr. Hester, and she was informed that her signature acknowledges receipt, denotes discussion about, but not agreement with the warning. (Burton depo. p. 84, l. 1-22). Mr. Hester consulted with his supervisor, Dr. John Bloch and the State Personnel Department about how to handle Ms. Burton's refusal to sign the warning. (Affidavit of Lance Hester). Mr. Hester was instructed by the State Personnel Department that Ms. Burton should sign the warning. (Affidavit of Lance Hester). Mr. Hester

and his supervisor, Dr. Bloch, both requested again that Ms. Burton acknowledge discussion and receipt of her warning by signing the document, and she again refused.  (Burton depo. p. 88, l. 13-22).

Ms. Burton submitted a written response to the warning claiming that her accusation that Mr. Hester would lie about the mail was simply an expression of her opinion and belief.  (Burton depo. p. 85, l. 12-15; p. 87, l. 18-20; Burton Response to Written Warning).  Ms. Burton asserted that she would not "sell my soul to anyone" by signing the written warning, even though her signature did not denote agreement.  (Burton depo. p. 87, l. 6-15).

Ms. Burton received a memorandum informing her that continuing to refuse to follow her supervisors' directive to sign the written warning would result in a written reprimand.  (Burton depo. p. 99, l. 6-11).  Ms. Burton in fact received a written reprimand for failing to follow a directive from her supervisors to sign her written warning.  (Burton depo. p. 96, l. 7 to p. 97, l. 4; Written Reprimand dated November 10, 2005).  Ms. Burton finally signed the written warning but twice refused to sign her written reprimand.  (Affidavit of Lance Hester).  Due to her continued refusal to follow the directives of her supervisors, Ms. Burton was suspended for ten days[2].  (Affidavit of Lance Hester).  Ms. Burton appealed her suspension.  (Burton depo. p. 117, l. 5-10).

Prior to Ms. Burton's suspension, she was given an opportunity to be heard by Commissioner Sparks pursuant to the Department of Agriculture's Handbook for Employees.  (Burton depo. p. 103, l. 4-21).  The handbook specifies that

> The Commissioner may suspend any employee without pay or
> other compensation as punishment for disciplinary or other just

---

[2] Alabama law requires that when a document pertaining to discipline is placed in an employee's personnel file, a copy must be provided to the employee within 10 days.  If the document is not provided to the employee, Alabama law mandates that it must be removed from the personnel file and cannot be used against the employee in future proceedings.  See Ala.Code § 36-26-27.1 (1975) discussed more fully herein at Section IV(B)(i).

cause....The Commissioner must notify the employee in writing of the reasons for the suspension, and the employee may submit in writing any answers or explanations concerning the reasons for the suspension to the Commissioner and/or the State Personnel Director. The employee will be afforded an opportunity to rebut, in a hearing before the Commissioner, the allegations in the letter of suspension before final action is taken.

(Excerpt of Department of Agriculture Handbook for Employees). Prior to Ms. Burton's suspension, she appeared before Commissioner Sparks and presented her argument as to why she believed the discipline was not warranted. (Burton depo. p. 103, l. 19-21). Ms. Burton received notice of the hearing on the day preceding it. (Burton depo. p. 103, l. 9-21). Commissioner Sparks affirmed the suspension and sent Ms. Burton a letter of suspension November 22, 2005 specifying that her suspension was to last from November 23, 2005 until December 6, 2005. (Letter of Suspension dated November 22, 2005). Commissioner Sparks further informed Ms. Burton of her right to a post-suspension review. (Id.) Commissioner Sparks appointed an Administrative Law Judge to preside over Ms. Burton's post-suspension review, and a hearing was held on February 21, 2006. (Burton depo. p. 127, l. 4-16). The Administrative Law Judge (ALJ) issued an opinion recommending that Ms. Burton's suspension be overturned, specifically noting that Commissioner Sparks has the right to accept, modify, or reject her opinion. (Burton depo. p. 143, l. 8-9; p. 144, l. 3-7). Commissioner Sparks has not accepted or modified Ms. Burton's suspension, nor has her suspension been removed from her personnel file. (Burton depo. p. 145, l. 2-12).

Following her suspension, Ms. Burton received a performance appraisal from Lance Hester. (Burton depo. p. 12, l. 11-13). Pursuant to Department of Agriculture and State Personnel policy, her appraisal score was reduced by 17 points by the fact of her suspension.

(Affidavit of Lance Hester).    The State of Alabama Personnel Department Performance Appraisal Form mandates as follows:

> The Disciplinary Score does not include scores for counseling and warnings.  To calculate the Disciplinary Score, identify the most severe step of discipline taken with the employee during the appraisal period.   If the most severe step was one or more reprimands, the Disciplinary Score will be 7.  If the most severe step was one or more suspensions, the Disciplinary Score will be 17.

(Burton Performance Appraisal for 2005).  If Ms. Burton had simply signed the written warning, denoting that the warning was discussed with her, the matter would have ended there.  (Affidavit of Lance Hester).  The level of discipline would not have escalated, nor would her performance appraisal score been reduced.  (Affidavit of Lance Hester).  Ms. Burton's performance appraisal has not been revisited because Commissioner Sparks did not accept the Administrative Law Judge's recommendation to overturn her suspension[3].  (Affidavit of Lance Hester).

Ms. Burton claims that after she appealed her suspension, Commissioner Sparks retaliated against her.  (Burton depo. p. 135, l. 14 to p. 136, l. 9).  She claims that he removed a cubicle privacy wall from around her desk and removed a refrigerator from her office.  (Burton depo. p. 136, l. 2 to p. 138, l. 3).  The privacy wall had been put up at her request and the refrigerator and the privacy wall were Department of Agriculture property.  (Burton depo. p. 137, l. 10 to p. 138, l. 3).

This privacy wall was installed by the night crew of General Services and stayed in place for several months.  (Affidavit of Lance Hester).  Ms. Burton's supervisor, Lance Hester, had not been aware that the wall was to be installed, and did not authorize its installation.  (Affidavit of

---

[3] The State Personnel Director, Jackie Graham, submitted a letter to Commissioner Sparks informing him that she had reviewed the recommendation of the Administrative Law Judge and disagreed with the ALJ's interpretation of state personnel policies.  Ms. Graham further found that Ms. Burton's suspension was consistent with state personnel policies.  (Letter dated April 27, 2006 from Jackie Graham).

Lance Hester).  Mr. Hester was displeased with the appearance of the privacy wall, and it blocked his view of her work area.  (Affidavit of Lance Hester).  He further could not justify the need for a privacy wall because Ms. Burton's office had only one occupant.  (Affidavit of Lance Hester).  The privacy wall was removed and replaced with a conventional desk.  (Affidavit of Lance Hester).  Once this change was made, the area was much improved in appearance without affecting functionality.  (Affidavit of Lance Hester).

Ms. Burton had a Department of Agriculture refrigerator located in her office.  (Burton depo. p. 137, l. 2-4).  There were numerous complaints from employees about excessive gathering and loud noises in Ms. Burton's office which was disruptive.  (Affidavit of Lance Hester).  The refrigerator was being used by the majority of employees on Ms. Burton's hall.  (Burton depo. p. 138, l. 2-8).  Mr. Hester attributed the disturbances to the presence of a department refrigerator in Ms. Burton's office.  (Affidavit of Lance Hester).  Consequently, the refrigerator was moved to an area where it could be used by employees without disturbing work areas.  (Affidavit of Lance Hester).  The refrigerator was relocated to the end of the hall where it can be easily accessed by employees without creating a disturbance.  (Affidavit of Lance Hester).  A drink machine is also located beside the refrigerator.  (Affidavit of Lance Hester).

Before and after the privacy wall was removed, Ms. Burton had an entire office to herself.  (Burton depo. p. 138, l. 20 to p. 139, l. 1).  The privacy wall was removed November 18, 2005.  (Burton depo. p. 136, l. 6-13).  The refrigerator was removed several weeks after her post-suspension hearing, in March 2006.  (Burton depo. p. 138, l. 16-19).  The removal of the refrigerator did not interfere with her ability to perform her job functions.  (Burton depo. p. 157, l. 8-12).

Plaintiff claims that one day when she was in her car on Federal Drive, the street where the Department of Agriculture is located, she saw Commissioner Sparks behind her. (Burton depo. p. 226, l. 22 to p. 227, l. 14). She seems to suggest that he was following her in retaliation for her having appealed her suspension. (Doc. 12, para. 40). Plaintiff claims that she was on her way to the hairdresser, located next to the Department of Agriculture, and saw the commissioner in his car. (Burton depo. p. 226, l. 22 to p. 228, l.18; p. 230, l. 7-12). The commissioner being behind the plaintiff on Federal Drive did not affect her pay or benefits. (Burton depo. p. 230, l. 21-23; p. 231, l. 11-14).

In June, 2006, Ms. Burton and other black Department of Agriculture employees met with the Alabama State Employees Association (ASEA) to express complaints about alleged race discrimination at the Department. (Burton depo. p. 53, l. 14 -23; p. 56, l. 14-21). Ms. Burton mainly complained about her suspension. (Burton depo. p. 56, l. 14-21). Ms. Burton did not tell anyone at the Department of Agriculture that she had met with the ASEA. (Burton depo. p. 59, l. 1-3).

Ms. Burton complains that some documents were missing from her personnel file when she reviewed it in September, 2006. (Burton depo. p. 149, l. 2-11). The Department of Agriculture personnel files are maintained by Personnel Director, Teresa Brunson. (Affidavit of Teresa Brunson). Ms. Brunson has never improperly removed documents from Ms. Burton's personnel file. (Affidavit of Teresa Brunson). No employee of the Department of Agriculture has every asked Ms. Brunson to improperly remove documents from Ms. Burton's personnel file. (Affidavit of Teresa Brunson). Ms. Burton also complains that documents were missing from her personnel file downtown in the State Personnel Department. (Burton depo. p. 151, l. 7-14). She claims the missing documents have affected her ability to be considered for other positions.

(Burton depo. p. 151, l. 15-20).  However, Ms. Burton knows of no instances where she has lost

any job opportunities because of the contents of her personnel file.  (Burton depo. p. 152, l. 15 to

p. 154, l. 19).   Further, the Department of Agriculture has no control over the personnel files

maintained downtown by the State Personnel Department.  (Affidavit of Teresa Brunson).

Ms. Burton filed a Charge of Discrimination with the Equal Employment Opportunity

Commission (EEOC) on September 27, 2006.    (EEOC Charge of Discrimination).  The text of

Ms. Burton's charge is as follows:

> I began my employment with the employer named above as an
> administrative assistant on September 1, 2001.  Since on or about
> February 21, 2006, I have been subjected to adverse terms and
> conditions of employment to included my having to remove my
> personal refrigerator from my office, having the privacy wall
> removed from around my desk, having my job responsibilities
> changed to include being given duties that a White female did not
> want.  I have been followed by a member of management while I
> was off work on annual leave.  In August of 2006, I was denied a
> promotion to the position of agriculture marketing specialist based
> on my lack of education, although I have a masters degree.
> However, a lesser qualified white was selected for the position.  I
> believe that I was discriminated against in violation of Title VII of
> the 1964 Civil Rights Act, as amended because of my race, Black
> and in retaliation to my complaint that I was suspended because of
> my race.

(Id.).

In her charge, Ms. Burton claims that the earliest date of discrimination is February 21,

2006 and the latest date is September 27, 2006.  (Id.).  She does not indicate that the alleged

discrimination or retaliation was continuing.  (Id.).  Ms. Burton filed the present lawsuit on June

20, 2007 alleging race discrimination, retaliation, and procedural due process violation under the

Fourteenth Amendment to the United States Constitution.  (Doc. 1).  Ms. Burton's claim of race

discrimination in her judicial complaint is based upon her suspension and how it was handled.

(Burton depo. 162, l. 21 to p. 163, l. 5).  Ms. Burton's retaliation claim is based upon her

11

suspension as well.  (Burton depo. p. 163, l. 6-8). On November 30, 2007, Ms. Burton filed an Amended Complaint omitting references to a claim of denial of promotion, but containing the same three causes of action listed in her complaint: race discrimination, retaliation, and 14th Amendment procedural due process violation.  (Doc. 12).

The Department of Agriculture categorically denies it discriminated or retaliated against Ms. Burton or violated her procedural due process rights.

### III.  Summary Judgment Standard

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment is due to be entered in favor of the moving party if "there is no genuine issue as to any material fact."  The moving party must first come forward with proof of the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).  The moving party may meet this burden by identifying portions of the pleadings, depositions, and answers to interrogatories, admissions or affidavits that demonstrate the absence of an issue of material fact.  Id. at 323.

The burden then shifts to the non-moving party to present affirmative evidence that there is a genuine issue of material fact.  Fed.R.Civ.P. 56(e);  Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Any inferences to be drawn from the underlying facts should be viewed in a light most favorable to the non-moving party.  Matsushita, 475 U.S. at 587.  If the record as a whole "could not lead a rational trier of fact to find for the non-moving party there is no 'genuine issue for trial'."  Id.

### IV.  Argument

Plaintiff has asserted Title VII claims for race discrimination, retaliation, and violation of her procedural due process rights under the Fourteenth Amendment against the Defendant.

A.    Title VII Claims Untimely and Not Properly Raised in EEOC Complaint

Title VII makes it unlawful for an employer to discriminate against an individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race. 42 U.S.C. § 2000e-2(a)(1). In evaluating a Title VII claim, a Court must first examine the EEOC administrative charge and investigation to determine the scope of the judicial complaint. Robinson v. Regions Financial Corp., 242 F.Supp.2d 1070, 1079 (M.D. Ala. 2003), citing Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985). A plaintiff's judicial complaint under Title VII is limited to acts of discrimination contained in her EEOC charge. Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1569 (11th Cir. 1987); Robinson, 242 F.Supp.2d at 1079 (citing Alexander v. Fulton County, 207 F.3d 1303, 1332 (11th Cir. 2000)). A judicial complaint may also include matters "which can reasonably be expected to grow out of the charge of discrimination." Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n. 8 (11th Cir. 1994).

     i.     Claims Not Mentioned in EEOC Complaint

Ms. Burton makes 6 distinct claims in her EEOC complaint: 1) removal of a refrigerator from her office, 2) removal of a cubicle privacy wall from around her desk, 3) change of job responsibilities, 4) being followed by a member of management while off work, 5) denial of a promotion to the position of agriculture marketing specialist, and 6) retaliation for complaining about her suspension.

Although Ms. Burton made an allegation of failure to promote to the position of agriculture marketing specialist in her Complaint, she omitted it from her Amended Complaint and has abandoned that claim. (Burton depo. 147, l. 18 to p. 148, l. 14). Ms. Burton makes no mention of the completion of a Form 40 in her EEOC charge. Nor does she mention the removal of her supervisory responsibilities after complaints by her subordinates[4], or denial of promotion

---

[4] Although Ms. Burton alludes to a change in her job responsibilities in her EEOC complaint, she specifies therein that she suffered an *increase* in job duties, not a decrease.

to the alleged nutrition program. In addition, even though not specifically mentioned in plaintiff's EEOC charge, these claims are likewise not reasonably related to charges mentioned in the file or ones which reasonably grew out of the existing charges. Thus, the only claims that are common to both the EEOC complaint and the judicial complaint are: 1) removal of a refrigerator from her office, 2) removal of a cubicle privacy wall from around her desk, 3) being followed by a member of management while off work, and 5) retaliation for complaining about her suspension.

In Swanson v. Civil Air Patrol, 37 F.Supp.2d 1312 (M.D. Ala. 1998) the Court found plaintiff's claim of unequal pay was barred because it was not mentioned in her EEOC charges. The Swanson plaintiff's first EEOC charge made a claim for hostile environment, sexual harassment and retaliation. Her second EEOC charge specifically stated a claim for retaliation. Judge Albritton held that because neither of the plaintiff's charges mentioned disparate treatment on the basis of gender because of unequal pay, the Court could not find the claims to be like or related to claims of hostile environment sexual harassment or retaliation. Summary judgment was granted for the defendant on plaintiff's unequal pay claim.

In Robinson v. Regions Financial Corp., supra, the Court similarly examined whether plaintiff's Title VII claims which were not included in her EEOC charge could be included in plaintiff's judicial complaint. Plaintiff's EEOC charge alleged the denial of one promotion. Plaintiff's judicial complaint alleged, inter alia, four individual instances in which she was allegedly denied a promotion. These four instances were referred to by this Court as Claim A, Claim B, Claim C and Claim D. Three of those claims survived a Statute of Limitations defense, but only Claim B was included in the plaintiff's EEOC charge. The Court noted that while Claims C and D were the same as Claim B, in that they all involved the denial of a promotion,

this Court held that Claims C and D were entirely new acts of discrimination never investigated by the EEOC. These claims arose after plaintiff filed her EEOC charge and were distinct from the claim that was the subject of the EEOC charge. As a result, the two later promotions could not reasonably have been expected to grow out of the plaintiff's original charge of discrimination. To the extent they were asserted under Title VII, the claims were barred.

Courts have found numerous other claims not specifically enumerated in an EEOC charge to be barred. Blalock v. Dale County Board of Ed., 84 F.Supp.2d 1291, 1301-1302 (M.D. Ala. 1991) (where plaintiff's EEOC charge only raised claims for gender-based disparate pay and disparate treatment, claim for hostile work environment was separate and distinct and not reasonably related to other claims); Sweeney v. State of Alabama Alcoholic Beverage Control Bd., 94 F.Supp.2d 1241, 1267 (M.D. Ala. 2000), *vacated in non-relevant part and superseded in non-relevant part by* 117 F.Supp.2d 1266 (M.D. Ala. 2000) (where plaintiff's EEOC charge alleged defendant failed to reasonably accommodate plaintiff's alleged disability but did not contain an allegation regarding a hostile work environment based on race, sex or alleged disability, the claim was unrelated and, therefore, barred).

There is no mention in Ms. Burton's EEOC charge of any alleged discrimination or retaliation regarding the Commissioner's alleged rejection of the recommendation of the Administrative Law Judge. In her judicial complaint, Ms. Burton alleges that the Commissioner's failure to act on the Administrative Law Judge's recommendation constitutes retaliation for her appealing her suspension. (Doc. 12, para. 38). There is no mention in Ms. Burton's EEOC charge of any retaliation based upon the rejection of the Administrative Law Judge's recommendation. Therefore, this claim is barred.

Based upon the above, defendant asserts that plaintiff's EEOC charge did not raise any race claims based on an alleged failure to complete a Form 40 on her, denial of a promotion to the alleged nutrition program or removal of supervisory duties.   The only mention of race discrimination or retaliation in Ms. Burton's charge of discrimination concerns claims relating to her suspension, removal of a privacy wall and refrigerator from her office. She gave no details of the alleged race discrimination or retaliation; and there is no mention that the discrimination or retaliation was ongoing.

ii.     Claims Are Time Barred

To the extent that Ms. Burton makes claims for race discrimination or retaliation for events prior to March 31, 2006, they are barred for failure of the plaintiff to file her charge within 180 days of the discriminatory act.  Ms. Burton filed an EEOC Charge of Discrimination on September 27, 2006.   This Court may only consider discrete acts that occurred between March 31, 2006 and September 27, 2006 (180 days before September 27, 2006).  42 USC § 2000 e – (5)(e)(1) (charge shall be filed within 180 days after the alleged unlawful employment practice occurred.)   Accordingly, any alleged discriminatory conduct that occurred prior to March 31, 2006 is time-barred.

None of the claims common to the EEOC complaint and the judicial complaint: 1) removal of a refrigerator from her office on March 27, 2006, 2) removal of a cubicle privacy wall from around her desk on November 18, 2005, 3) being followed by a member of management while off work prior to April, 2006, and 5) retaliation for complaining about her

suspension[5], fall within the period of March 31, 2006 to September 27, 2006. Therefore, these claims are barred.

Further, although plaintiff claims in her judicial complaint that the retaliation was ongoing, in her EEOC charge, in the box noted as "Dates Discrimination Took Place," the plaintiff only mentioned the time period of February 21, 2006 to September 27, 2006 and did not indicate that the retaliation was ongoing. Accordingly, any alleged discrete acts of retaliation after September 27, 2006 are barred by her failure to fulfill the administrative prerequisites to filing suit under Title VII.

Based upon the above, defendant submits that none of Ms. Burton's claims were timely raised in her EEOC charge and thus, are not properly the subject of this judicial complaint.

B.     Title VII Claims

Even if Plaintiff's claims were timely raised in her EEOC charge, plaintiff cannot establish a viable cause of action for discrimination or retaliation under Title VII.

i.     Race Discrimination

The plaintiff claims that she was discriminated against on the basis of her race but offers no direct evidence of race discrimination. With respect to circumstantial claims of race discrimination under Title VII, the Eleventh Circuit held that:

> Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. Where direct evidence of discrimination is unavailable, a Title VII plaintiff may nonetheless present circumstantial evidence of discrimination sufficient to create a jury question. In reviewing Title VII claims that are supported by circumstantial evidence, we use the familiar McDonnell Douglas/Burdine three-step burden-shifting

---

[5] Plaintiff's allegations regarding retaliation in her judicial complaint refer to the removal of the cubicle privacy wall and refrigerator from her office, reduction of her appraisal score, and the alleged refusal to enforce the ALJ's recommendation.

framework. Under this framework, the plaintiff shoulders the initial burden ... of establishing a *prima facie* case of racial discrimination. Where direct evidence of discrimination is unavailable, a Title VII plaintiff may nonetheless present circumstantial evidence of discrimination sufficient to create a jury question. In reviewing Title VII claims that are supported by circumstantial evidence, we use the familiar McDonnell Douglas/Burdine three-step burden-shifting framework. Under this framework, the plaintiff shoulders the initial burden ... of establishing a *prima facie* case of racial discrimination. If a *prima facie* case has been shown, then the defendant must articulate some legitimate, nondiscriminatory reason for the [adverse employment action]. If this is accomplished, the plaintiff may then attempt to demonstrate that the proffered reason was in fact merely a pretext for the defendant's actions. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. In deciding a motion by the defendant for judgment as a matter of law in a discrimination case where the defendant has offered nondiscriminatory reasons for its conduct, a court conducts a focused inquiry. The court must, considering all the evidence, ascertain whether the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered legitimate reasons were not what actually motivated its conduct. The district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.

Silvera v. Orange County School Board, 244 F.3d 1253, 1258 (11th Cir. 2001)(internal citations and quotations omitted, ellipses in original).

The plaintiff seems to claim that she was improperly suspended because of her race in violation of Title VII. (Burton depo. p. 243, l. 13 to p. 244, l. 2; p. 244, l. 21 to p. 245, l. 6). However, Ms. Burton was suspended in November/December, 2005, well outside the 180 day time frame prior to the filing of her EEOC complaint. Accordingly, Ms. Burton's race discrimination claim is barred.

Even if Ms. Burton's claim was timely filed, she cannot establish that she was improperly suspended because of her race. Ms. Burton claims that no one else was suspended but her. (Burton depo. p. 243, l. 20 to p. 244, l. 2). She also claims that she received different discipline than a white employee named Jamey Baxley who allegedly used abusive language toward an Assistant Commissioner and was sent home for the day with pay. (Burton depo. p. 119, l. 6 to p. 120, l. 14). Ms. Burton does not have first-hand knowledge of the alleged incident involving Ms. Baxley; she heard about it from other people. (Burton depo. p. 119, l. 12-20).

In order to establish a *prima facie* case of disparate treatment in the enforcement of work rules[6], plaintiff must show that (1) she is a member of a protected class; (2) has engaged in or been accused of engaging in misconduct similar to persons outside of her protected status (3); and that similarly situated white employees received more favorable treatment. Early v. Morris Newspaper Corp., 54 F.Supp.2d 1261, 1271 (M.D. Ala. 1999) (citing Jones v. Bessemer Caraway Medical Ctr., 137 F.3d 1306, 1311 n.6 (11th Cir. 1998), *modified in non-relevant part on denial of reh'g*, 151 F.3d 1321 (11th Cir. 1998) (modifying Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989).

In evaluating whether the misconduct committed by Plaintiff is similar to persons not in her protected class, courts have evaluated the differing status of employees. That employees are disciplined by different supervisors may serve as a basis for distinguishing conduct given to employees not in an employee's protected class. See Fikes v. Alabama Dept. of Youth Services, 2007 WL 1673940 (M.D. Ala. 2007)(holding that where employee failed to show she was disciplined by the same supervisor as her comparator and offered no evidence of the

---

[6] The Eleventh Circuit has held that "[t]o establish discrimination in discipline, Plaintiff must show these things: 1) that [s]he belongs to a protected class under Title VII; 2) that [s]he was qualified for the job; and 3) that a similarly situated employee engaged in the same or similar misconduct but did not receive similar discipline." Nicholas v. Board of Trustees of the University of Alabama, 251 Fed.Appx. 637, 642 (11th Cir. 2007). The defendant acknowledges that the plaintiff held the position of ASA III and was adequately performing the job functions.

circumstances of the purported comparator's actions, plaintiff failed to establish that she and the comparator were similarly situated and received different treatment); Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) (noting that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis").  See also, Nix v. W.L.C.Y. Radio/Rahall Communications, 738 F.2d 1181, 1186 (11th Cir.1984) (where employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown).  The plaintiff's supervisor, Lance Hester, was not Jamey Baxley's supervisor. Thus, the plaintiff cannot establish that Ms. Baxley was similarly situated and fails to establish a *prima facie* case.

The Plaintiff has the burden of proving "that the quantity and quality of the comparator's misconduct…be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  McCann v. Tillman, ___ F.3d ___, 2008 WL 1991172 (11th Cir. May 9, 2008)(finding improper comparators where plaintiff's conduct was "qualitatively different" from her comparators' conduct).  See also, Fikes v. Alabama Dept. of Youth Services, 2007 WL 1673940 (M.D. Ala. 2007)(citing Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).  The plaintiff does not offer any evidence that the quantity or quality of Ms. Baxley's conduct was nearly identical to hers, and thus, cannot establish a *prima facie* case.

The plaintiff was initially disciplined with a written warning for insubordination after she was rude to her supervisor and accused him of dishonesty.  When the plaintiff was asked to sign the written warning acknowledging that she received it and that it had been discussed with her, she refused.  Her continued refusal to sign her written warning resulted in the issuance of a written reprimand.  After she refused to sign her written reprimand, the plaintiff was suspended for ten days.  The plaintiff claims that the suspension was not warranted because she

acknowledged receipt of her written warning in her written response thereto. The State of Alabama and the Department of Agriculture have a policy requiring its employees to sign a copy of written discipline. An employee's signature simply denotes acknowledgment of receipt and discussion of the discipline at issue; it does not denote agreement. Such a requirement is consistent with the Department of Agriculture's responsibility to its disciplined employees under Alabama law.

Pursuant to Alabama statutory law:

> Notwithstanding any other laws, rules, or regulations to the contrary, when a document pertaining to disciplinary action, including, but not limited to, written reprimands, suspensions, notes pertaining to oral reprimands or counselings regarding a state employee, or notes pertaining to matters that may be used regarding the employee in a disciplinary action are placed in the employee's personnel file, the agency which is the employer shall supply a copy of the documentation to the employee no later than 10 days after its inclusion in his or her personnel file. In the event that the information is not provided to the employee within 10 days as herein required, the reprimands or notes shall be removed from the employee's file and shall not be used against the employee in any future proceeding or disciplinary action.

Ala.Code § 36-26-27.1 (1975). This statutory requirement underscores the importance of having an employee sign an acknowledgment of receipt and discussion of written documentation of discipline to be placed in her personnel file. The requirement that an employee sign such an acknowledgement protects the Department of Agriculture against allegations of violation of the statute, allegations of placement of written discipline that is different than that discussed with the employee, etc. Ms. Burton's refusal to sign her written warning acknowledging discussion and receipt of that document which was to placed in her personnel file was a violation of departmental regulations and exposed the Department of Agriculture to allegations of violation of the statute requiring that she receive a copy of that warning.

The plaintiff seems to claim that she was subjected to race discrimination when she was not hired in the alleged nutrition program for a position she considered to be a promotion. Initially, the plaintiff's claim for discrimination for failure to promote is untimely and was not included in her EEOC Charge of Discrimination. The plaintiff wrote a letter to the commissioner expressing an interest in working in the alleged program in 2004. The plaintiff filed her EEOC complaint September 27, 2006 and makes no mention of failure to promote to any alleged nutrition program. She only mentions a position as agriculture marketing specialist in her EEOC complaint and acknowledges that she has abandoned that claim. Because plaintiff's claim of failure to promote to any alleged nutrition program falls outside 180 days prior to the filing of her EEOC complaint and is not mentioned therein, it is barred.

Even if the plaintiff's claim for failure to promote was timely, she cannot establish a *prima facie* case. The Eleventh Circuit has held that in order "to establish a *prima facie* case of discrimination for failure to promote, a plaintiff must prove (1) that [she] was a member of a protected class; (2) that [she] was qualified for and applied for the position; (3) that [she] was rejected; and (4) that others who were not members of the protected class were hired." Laosebikan v. Coca Cola Company, 2006 WL 224167 (11th Cir. 2006). The plaintiff cannot establish that she applied for and was qualified for any position in any alleged nutrition program or that the position was filled by an individual outside her protected class. The plaintiff merely asserts that she wrote a letter to the commissioner in 2004 expressing interest in a position in the nutrition program. She does not present any evidence that she actually applied for any particular position and was rejected. Indeed, there have never been any job openings at the Department of Agriculture for a Nutrition Program. Accordingly, the plaintiff fails to establish a *prima facie* case for failure to promote and summary judgment is due to be granted.

Even if the plaintiff could present a *prima facie* case of race discrimination, all of the defendant's conduct complained of by the plaintiff was engaged in for the race neutral reasons discussed more fully above. Plaintiff cannot establish that any of the reasons articulated by the Defendant for its conduct are pretextual. Accordingly, the defendant's motion for summary judgment is due to be granted.

ii.    Retaliation

The plaintiff makes six claims of retaliation: 1) Mr. Hester's removal of her supervisory responsibilities in May, 2005, 2) Mr. Hester's reduction of her performance appraisal score after her November, 2005 suspension, 3) removal of the privacy wall from her office on November 18, 2005, 4) removal of the refrigerator from her office on March 27, 2006, 5) Commissioner Sparks' alleged failure to act on the recommendation of the ALJ, and 6) Commissioner Sparks allegedly following the plaintiff.

Importantly, Ms. Burton's claims regarding removal of supervisory responsibilities, reduction of her performance appraisal score, and failure to act on the ALJ's recommendation were not mentioned at all in her EEOC response. Further, her claims of removal of supervisory responsibilities, reduction of her performance appraisal score, removal of the privacy wall, removal of the refrigerator, and being followed were not timely raised in plaintiff's EEOC complaint because they did not occur between March 31, 2006 and September 27, 2006.

Even if these claims were timely raised, plaintiff cannot establish that the alleged conduct was retaliatory. Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3, "forbids employer actions that discriminate against an employee … because [s]he has opposed a practice that Title VII forbids or has made a charge … in a Title VII investigation, proceeding, or hearing." Cyrus v. Hyundai Motor Mfg. Alabama, LLC, 2008 WL 1848796 (April 24, 2008)(quoting Burlington

Northern & Santa Fe Ry. V. White, 548 U.S. 53 (2006)).  In order to establish a *prima facie* case of retaliation using the McDonnell Douglas framework, plaintiff must show the following elements:  (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action.  McCann v. Tillman, ___ F.3d ___, 2008 WL 1991172 (11th Cir. May 9, 2008); Hendrix v. Snow, 2006 WL 288099 (11th Cir. 2006); Brungart v. Bell South Communications, Inc., 231 F.3d 791, 798 (11th Cir. 2000); Ashe v. Aronov Homes, Inc. , 354 F.Supp.2d 1251, 1264 (M.D. Ala. 2004).  The Eleventh Circuit has held that as with a discrimination claim, if the defendant "articulate[s] legitimate reasons for [its] actions, [plaintiff] must then show that the employer's proffered reasons for taking the adverse action were actually pretext for prohibited retaliatory conduct."  McCann v. Tillman, ___ F.3d ___, 2008 WL 1991172 (11th Cir. May 9, 2008)(internal quotations omitted).  In order to make such a showing, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  McCann v. Tillman, ___ F.3d ___, 2008 WL 1991172 (11th Cir. May 9, 2008)(internal quotations omitted).

In this case, the Defendant admits that Ms. Burton engaged in statutorily protected conduct when she appealed her suspension in November, 2005 and complained of alleged discrimination to the ASEA in June, 2006.

As concerns the second element of the *prima facie* case, Ms. Burton fails to establish that she suffered an adverse employment action.  A tangible employment action is "a significant hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Hulsey v. Pride Restaurants, LLC, 367 F.3d

1238, 1245 (11th Cir. 2004))(citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). The removal of the privacy wall and refrigerator from her office do not constitute adverse employment actions. When an employment action does not result in a change in pay, benefits, or seniority, it is insufficient to sustain a retaliation claim. Horn v. University of Minnesota, 362 F.3d 1042, 1046 (8th Cir. 2004) (quoting Buettner v. Arch Coal Sales Co., 216 F.3d 707, 715 (8th Cir. 2000), cert. denied 531 U.S. 1077, 121 S.Ct. 773, 148 L.Ed 2d 672 (2001). It is undisputed that the removal of these items from her office did not result in a change of pay, benefits or seniority.

Finally, there is no causal connection between any protected conduct and any alleged adverse employment action taken against Ms. Burton. In order to establish a causal connection, a plaintiff must prove that the protected activity and the adverse action are "not completely unrelated." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). The burden of causation may be met "by showing that the employer gained knowledge of the employee's protected conduct at a point temporally proximate to the adverse action." Ashe, 354 F.Supp.2d at 1264. Temporal proximity alone, however, is insufficient to create a genuine issue where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct. Brungart, 231 F.3d at 799.

When evaluating the issue of temporal proximity, the United States Supreme Court has held that the time period between knowledge of the protected activity and an adverse action must be "very close." Clark County School District v. Breeden, 532 U.S. 268, 273 (2001). The Court in the Clark County case held that 20 months' time delay was insufficient to establish causality. Id. The Clark Court also cited with approval decisions in which three to four months' disparity was found to be insufficient to show a causal relation. Higdon, 393 F.3d at 1220. The Eleventh

Circuit has held that a three month period does not allow a reasonable inference of causal relation.  Higdon, 393 F.3d at 1221.

In this case, it is undisputed that the removal of plaintiff's supervisory responsibilities occurred prior to her engaging in any statutorily protected activity.  Her supervisory duties were transferred to Lance Hester May 10, 2005.  Ms. Burton appealed her suspension in November, 2005 and complained to the ASEA in June, 2006.  Thus, the plaintiff does not establish any causal relation between her appeal or complaint and the removal of her supervisory duties.

Next, the plaintiff does not establish that the reduction of her performance appraisal score was retaliatory.  An employee's performance appraisal score must be reduced by 17 points when she is suspended.  There is no evidence, nor can there be, that Lance Hester reduced her performance appraisal score in retaliation for Ms. Burton appealing her suspension.

The plaintiff claims that the privacy wall around the desk and the refrigerator in her office were removed in retaliation for her having appealed her suspension.  However, the plaintiff cannot present any evidence of a causal link between her appeal and the removal of the items from her office.  It is undisputed that both the privacy wall and the refrigerator are property of the Department of Agriculture, and the plaintiff has no right to have either of them in her office.  Further, the removal of those items from her office does not constitute an employment action and did not affect her rate of pay, benefits or ability to perform her job functions.  Ms. Burton maintains a private office, even without the privacy wall, and has access to the Department of Agriculture refrigerator.

Plaintiff claims that the Commissioner retaliated against her by failing to act on the recommendation of the Administrative Law Judge and by following her.  First, there is no temporal proximity between the Commissioner's failure to accept the ALJ's recommendation

issued on April 18, 2006 and plaintiff's appealing her suspension November 18, 2005.  A period of over five months passed between the time of Ms. Burton's appeal and the issuance of the ALJ's recommendation.   Such a temporal lapse in time is insufficient to show causation. Wascura v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) (three and one half month temporal proximity without more insufficient); Hammons v. George C. Wallace State Community College, 174 Fed.Appx. 459 (11th Cir. 2006) (five month period between submission of letter and adverse employment action insufficient to show causation); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 951 (11th Cir. 2000) (seven month period between protected activity and adverse employment action too indirect to satisfy temporal proximity); Watkins v. Huntsville, Alabama, 176 Fed.Appx. 955 (11th Cir. 2006) (eight month lapse between EEOC charge and termination did not raise inference of causal link).

In addition, however, there is no other relationship between the two events.   The discipline Ms. Burton received was only related to her conduct in November, 2005 when she continually refused to sign her warning and reprimand.  She was disciplined because she failed to sign the acknowledgement of discussion and receipt of her warning, after having previously been directed to do so by her supervisor, Lance Hester.  There is no evidence, nor can there be, of any connection between the Commissioner's declining to accept the ALJ's recommendation and her appeal or complaints to the ASEA.

Finally, in her Complaint and Amended Complaint, plaintiff alludes to being followed by the commissioner outside of work.  Plaintiff claims that one day when she was in her car on Federal Drive, she saw the commissioner behind her.  (Burton depo. p. 226, l. 22 to p. 227, l. 14). The Department of Agriculture is located on Federal Drive.  Although the plaintiff claims the commissioner was following her, she offers no evidence to establish that his presence behind her,

in his car, on the road where the Department of Agriculture is located, was anything other than a coincidence. The plaintiff cannot establish retaliatory intent, and her claim must fail.

Further, Ms. Burton fails to establish that seeing the commissioner outside of work is an employment action. Undisputedly, seeing the commissioner on Federal Drive did not affect the plaintiff's pay, benefits or seniority. When an employment action does not result in a change in pay, benefits, or seniority, it is insufficient to sustain a retaliation claim. Horn v. University of Minnesota, 362 F.3d 1042, 1046 (8th Cir. 2004) (quoting Buettner v. Arch Coal Sales Co., 216 F.3d 707, 715 (8th Cir. 2000), cert. denied 531 U.S. 1077, 121 S.Ct. 773, 148 L.Ed.2d 672 (2001). Because plaintiff fails to establish any tangible employment action or causal connection between a protected activity and conduct of the defendant, her retaliation claims must fail.

Even if plaintiff could establish a prima facie case, she cannot show that the reasons for the actions complained of are pretext for retaliatory conduct. Accordingly, summary judgment is due to be granted.

### C.    Procedural Due Process Claim

The plaintiff purports to bring a procedural due process claim under the 14th Amendment to the United States Constitution. She further claims that a basis for this Court's jurisdiction is "the 14th Amendment to the Constitution of the United States of America.[7]" (Doc. 12, para. 1). Nowhere in plaintiff's Complaint or Amended Complaint does she mention 42 U.S.C. § 1983, the vehicle through which claims of constitutional violations are brought.

Section 1983 creates a private right of action for damages against persons whose conduct "under color of" state law deprives a plaintiff of "any rights, privileges, or immunities secured by

---

[7] Although the plaintiff claims that the 14th Amendment is a basis for this Court's jurisdiction, it is not. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

the Constitution and laws." There are two basic elements to an § 1983 claim: (1) an act or omission depriving the plaintiff of a right, privilege, or immunity secured by the United States Constitution or by federal law; or (2) the deprivation must be caused by a person "acting under color of" state law. Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). As its statutory text implies, § 1983 does not itself create any substantive rights. See Albright v. Oliver, 510 U.S. 266, 269-71 (1994). Rather, it is merely a vehicle for vindicating rights that are conferred elsewhere by federal law. Id. Consequently, in analyzing any § 1983 claim, the first step is to "identify the specific constitutional [or federal] right allegedly infringed." Albright, 510 U.S. at 271. Then, once the right is identified, the second step is to determine whether a deprivation of that right has in fact occurred, and this can only be done by applying the standards applicable to that particular constitutional or federal right. See Graham v. Connor, 490 U.S. 386, 394 (1989).

The plaintiff does not bring her claim of a 14th Amendment procedural due process violation pursuant to § 1983. Accordingly, she fails to properly present this claim to the Court and summary judgment is due to be granted.

Even if the plaintiff properly presents her procedural due process claim to this Court, she cannot establish that her constitutional rights have been violated by the Defendant. The plaintiff claims that she did not receive proper notice of her pre-suspension hearing in front of the commissioner and did not have an opportunity to present evidence in the matter. (Doc. 12, para. 55). She further complains that her due process rights have been violated by the commissioner's failing to issue a final decision as to her suspension. (Id.) The plaintiff received the due process to which she was entitled under Alabama law, thus, her claim must fail.

In <u>Hill v. Manning</u>, 236 F.Supp.2d 1292, 1298-99 (M.D. Ala. 2002), the plaintiff had been employed as an Alabama State Trooper.  The plaintiff trooper received notice that his termination had been recommended for his failure to return his patrol car as ordered, refusal to write reports requested by his supervisor, and failure to cooperate with administrative investigators.  The trooper filed a notice of appeal with the State Personnel Department and filed suit against the Department of Public Safety alleging, among other things, a § 1983 procedural due process claim.  In examining the merits of the trooper's procedural due process claim, the Court held that:

> [T]he court can resolve the procedural due process issue on the basis of the doctrine announced by the Supreme Court in <u>Parratt v. Taylor</u>, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and later extended in <u>Hudson v. Palmer</u>, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Under the rules gleaned from these two cases, an unauthorized intentional or negligent deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if the state provides a meaningful post-deprivation remedy for the loss. <u>Tinney v. Shores</u>, 77 F.3d 378, 381-82 (11th Cir. 1996).
>
> In applying <u>Parratt</u> and <u>Hudson</u>, a distinction is drawn between cases in which a state process itself is challenged, and cases in which the procedures as applied are challenged. <u>See</u> <u>Bell v. City of Demopolis</u>, 86 F.3d 191, 192 (11th Cir. 1996)(distinguishing between a challenge to the state procedure itself and a challenge to the state procedure as applied). The significance of the distinction is that when a state actor takes unauthorized action, the procedural due process violation does not become complete until the state refuses to provide due process. <u>McKinney v. Pate</u>, 20 F.3d 1550, 1563 (11th Cir. 1994).  The rationale for this distinction rests with the fact that once a state has established procedures for the termination of a Merit System employee-which Alabama undisputedly has-it cannot predict whether or not, in a given situation, those procedures will be followed or ignored. *See* <u>Tinney</u>, 77 F.3d at 382 n.1. Therefore, when a State official takes intentional unauthorized action that was not preventable beforehand by the State, no procedural due process violation

occurs unless the state fails to provide the opportunity to redress the situation after the fact. Id.

\*\*\*

In conclusion, the Plaintiff argues that the Defendants terminated his employment without following the procedure required by the Alabama Merit System. See Ala. Code 36-26-27 (stating that the employee must be terminated by the "appointing authority"). Because he only challenges the unauthorized actions of the State officials, the Plaintiff cannot establish a procedural due process violation if the state provides him with a meaningful post-deprivation remedy for his loss. Because the State has provided such a remedy in the form of its administrative appeals process, the Plaintiff's § 1983 claim cannot proceed.

Hill v. Manning, 236 F.Supp.2d 1292, 1298-99 (M.D. Ala. 2002).

Similarly, in the case at bar, the state provides for procedural due process in suspensions[8].

---

[8] Ala.Code § 36-26-28 (1975) provides:

(a) An appointing authority may, from time to time, peremptorily suspend any employee without pay or other compensation as punishment for improper behavior, but the suspension or total suspension by the appointing authority of the person shall not exceed 30 days in any year of service. The suspension with loss of pay may be effected only by service upon the employee by the appointing authority of written charges setting out clearly the delinquency for which the suspension was made, a copy of which must at the same time be mailed or delivered to the State Personnel Director, and a written notice of the right to appeal the suspension as provided in subsection (b). The suspended employee shall have the right to file with the appointing authority a written answer or explanation of the charges.

(b)(1) The suspended employee may within 10 days after notice pursuant to this section file a written notice of appeal from the suspension. If the suspended employee gives notice of appeal from the suspension, the appointing authority shall have the discretion of whether to stay the suspension pending the disposition of the appeal or proceed with the suspension and provide the employee with a post-suspension review subject to the time frames prescribed herein.

(2) If a timely notice of appeal is filed, the appointing authority shall elect between one of the following methods of reviewing the claim. The appointing authority shall, within 10 days after receipt of the appeal, do one of the following:
a. Appoint a panel as provided for in subsection (c) to decide questions of fact, conclusions of law, and make recommendations to the appointing authority.
b. Appoint a designated hearing officer as provided for in subsection (d) who will decide questions of fact, conclusions of law, and make recommendations to the appointing authority.

\*\*\*

State law requires the appointing authority to set out the reason for the suspension in writing and served upon the employee. The employee has the right to file a notice of appeal within 10 days after notice of the suspension. If the employee files a notice of appeal, the appointing authority must choose to appoint a panel or a hearing officer to decide fact questions and questions of law and make recommendations to the appointing authority. See Ala.Code § 36-26-28 (1975).

The Defendant followed the procedures set forth by the State of Alabama in suspending Ms. Burton. Ms. Burton received a written explanation of the reasons for her suspension from the appointing authority, Commissioner Sparks, prior to the start of the suspension. Ms. Burton was afforded an opportunity to be heard in front of Commissioner Sparks prior to the start of her suspension. Ms. Burton further had a post-suspension hearing in front of an Administrative Law Judge where she was represented by counsel. Pursuant to Alabama Code § 36-26-28, Commissioner Sparks could have proceeded with the plaintiff's suspension after she filed her notice of appeal and simply afforded her a post-suspension review. Ms. Burton was actually heard on her suspension before and after it went into effect, in full accordance with Alabama law.

Ms. Burton makes no allegation in her complaint that the process set forth under Alabama law for review of her suspension violates due process. She simply challenges the actions of state officials in notifying her of her pre-suspension hearing the day before it was to be held, and not issuing a formal rejection of the ALJ's recommendation. Alabama law does not require a pre-suspension hearing; the Department of Agriculture simply allows for such a hearing

---

(e) Irrespective of which method the appointing authority selects for adjudicating suspension appeal hearings, all hearings shall be conducted in accordance with notions of due process.

in its internal policies.  Thus, the fact that the plaintiff received notice of her pre-suspension hearing the day before it was held is of no consequence as it relates to the notions of procedural due process.  Further, Alabama Code § 36-26-28 does not require the issuance of a written rejection of the ALJ's decision within any strict time frame, and the plaintiff fails to establish that the absence of a written rejection of the recommendation violates her due process rights. Accordingly, because the state provides the plaintiff with "a meaningful post-deprivation remedy for [her] loss", the plaintiff's procedural due process claim must fail.

## V.  <u>Conclusion</u>

For all the reasons stated herein, Defendant submits that Summary Judgment is due to be entered in its favor and against the Plaintiff on all claims asserted herein.


    /s/    Emily C. Marks
EMILY C. MARKS

    /s/    E. Hamilton Wilson, Jr.
E. HAMILTON WILSON, JR.
Attorneys for the Defendant


<u>OF COUNSEL:</u>
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama  36102-2148
Phone:  (334) 387-7680
Fax:     (334) 387-3222

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2008, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Juraldine Battle-Hodge
207 Montgomery St., Ste. 215
Montgomery, AL  36104-3528

/s/ Emily C. Marks
OF COUNSEL