## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
## NORTHERN DIVISION

2008 MAY 30  P 2: 19

SHANNON BURTON,

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

   Plaintiff,          )

v.                 )   Civil Action No: 2:07-CV-548

STATE OF ALABAMA        )
DEPARTMENT OF AGRICULTURE &
INDUSTRIES,           )

    Defendant.         )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Shannon Burton in the above styled cause and moves this Honorable Court to deny Defendant's Motion for Summary Judgment. As grounds therefore, the Plaintiff avers that there is a genuine issue of material fact to be submitted to a jury of Plaintiff's peers, and the Defendant is not due summary judgment as a matter of law, as to any claims made by the Plaintiff. In support of her response, Plaintiff relies on the applicable law, pleadings, depositions and affidavits attached hereto and for her response hereby provides as follows:

## I. SUMMARY OF THE CASE

### Nature of the Case

This action was filed by Shannon Burton against the Alabama State Department of Agriculture & Industries in violation of Title VII of the Civil Rights Act of 1964, as amended, retaliation and 42 U.S.C.S. Section 1983.

**Course of Proceedings**

This lawsuit was timely filed in the United States District Court for the Middle District of Alabama, Northern Division on June 20, 2007. (Exhibit "1" - Complaint). Defendant filed his Answer on July 16, 2007. (Exhibit "2" - Answer). Plaintiff filed her Amended Complaint on November 30, 2007. (Exhibit "3" – Amended Complaint). Defendant filed its Answer to the Amended Complaint on December 31, 2007. (Exhibit "4" – Answer to Amended Complaint). Defendant filed its Motion for Summary Judgment on May 13, 2008.

## II. PLAINTIFF'S SUMMARY OF FACTS

The Defendant sets forth what it labels as undisputed facts. The Plaintiff avers that the facts are very much disputed. Plaintiff is a black female over the age of 19. Plaintiff began working for the Alabama Department of Agriculture & Industries (Defendant) in September of 2001. Benny Hitch was Plaintiff's immediate supervisor. Lance Hester was Plaintiff's immediate supervisor until April 2006. (Exhibit 5 – Plaintiff's Affidavit, pg. 1). Plaintiff is an ASA III. (Exhibit 1, par. 8).

Plaintiff served on jury duty from October 24, 2005 through October 28, 2005. (Exhibit 6 – Certificate of Jury Service). Plaintiff returned to work on October 31, 2005. Upon returning to work, Plaintiff discovered mail in her chair and on her desk that had not been opened the entire week she was on jury duty. (Exhibit 1. pars. 9-12, Exhibit 6\5, pg. 1).

The unopening of the mail was a major concern to Plaintiff due to the sensitive nature of the mail. Many of the pieces of mail were date sensitive and

required immediate attention.  Plaintiff proceeded to Lance Hester's (Program Director) office.  Mr. Hester was the Plaintiff's supervisor.  The Plaintiff asked Mr. Hester, "Are you aware that the mail has not been opened for an entire week?"  Mr. Hester responded, "I was under the assumption that Mary Catrett was opening the mail."  Plaintiff responded to Mr. Hester that that had not happened.  Ms. Catrett was on leave from October 24, 2005 to October 25, 2005 (two of the five days that Plaintiff was on jury duty).  However, she was at work for the three remaining days.

Plaintiff asked Mr. Hester if he would like to look at the postmark dates on the mail.  Mr. Hester told Plaintiff that that was not necessary, but if it would make her happy he would.  Plaintiff explained to Mr. Hester that his looking at the mail was not about making her happy; it was about the productivity of the office.

Plaintiff stated to Mr. Hester that if she had left the mail unopened for an entire week, a "federal" case would have been made out of the situation.  At that time, Plaintiff realized that Mr. Hester had another appointment.  Before Plaintiff left Mr. Hester's office she commented, "It does not matter anyway because if this incident ever comes up again about the mail not being opened, you probably would not remember I told you about the postmark dates on the mail of everyday of the week and probably would not tell the truth about the dates."  Plaintiff then left Mr. Hester's office.

Mr. Hester only met with his appointment for approximately ten (10) minutes.  He then came to the Plaintiff's desk and stated, " I have a question regarding the last comment you made."  Plaintiff then asked Mr. Hester what he

would like to know." Mr. Hester asked, "Do you honestly believe that I would not tell the truth about the postmark dates on the mail even if I looked at the mail?" Plaintiff, answered, "Yes, I honestly believe that you would not tell the truth." This was Plaintiff's belief, not an accusation.

At that time Mr. Hester asked the Plaintiff to come to his office to see how they could move pass this. Plaintiff agreed. Plaintiff and Mr. Hester spoke for approximately 45 minutes. At no time did Mr. Hester indicate that Plaintiff had a demeanor of insubordination, showed lack of respect for his position, or indicated that Plaintiff's statement demonstrated a failure to submit to authority. To Plaintiff's surprise, there was no future discussion about the unopened mail. Mr. Hester was totally focused on Plaintiff's statement of her opinion.

On November 3, 2005, Lance Hester issued a written reprimand and warning to the Plaintiff for her statement of opinion. He indicated in the warning that Plaintiff's behavior was so severe that it warranted immediate attention. He directed Plaintiff to write a response after signing the warning. Plaintiff was instructed to admit to disruptive behavior, insubordination, and failure to submit to authority. She was further directed to admit that such behavior in the future would result in a reprimand and disciplinary action. Plaintiff did not initially sign this warning.

As a result, Plaintiff was issued a second written reprimand and warning and instructed that failure to sign the letter of reprimand and warning would lead to further disciplinary action. Plaintiff signed the warning on November 14, 2005. On November 15, 2005, Plaintiff received a letter of suspension. The letter of

suspension was a result of Ron Sparks, Commissioner, upholding Mr. Hester's recommendation.   The Plaintiff was suspended from November 21, 2005, through December 2, 2005, at 8:00 am.  The disciplinary action that Plaintiff was subjected to was extremely severe and did not fit the allegations.

Plaintiff appealed the suspension on November 18, 2005.  Ron Sparks, the Commissioner, immediately began retaliating against the Plaintiff once she filed the appeal.   On   the same day that Plaintiff filed her appeal, the Commissioner instructed the maintenance workers and prison inmates to tear down the Plaintiff's cubicle.  The cubicle had been in Plaintiff's office for almost a year and there was no mention that the cubicle was a problem.  There was no reason to tear the cubicle down other than to send Plaintiff a message that he, the Commissioner, was in control.  Plaintiff's computer and other work equipment were simply left on the Plaintiff's floor.  The office was left in complete disorder.

In Plaintiff's appeal she indicated that the Defendant did not give her a reasonable amount of notice for the hearing.  Plaintiff was given notice of the hearing at 4:45 p.m. on November 17, 2005, indicating that her suspension hearing would be held on November 18, 2005, at 10:30 a.m.  This was clearly a violation of the Plaintiff's procedural due process rights under the Constitution of the United States of America.

Per the Plaintiff's suspension orders, Plaintiff began serving her suspension on November 21, 2005.  On November 22, 2005, the Defendant, Commissioner Sparks, upheld   the suspension.   In this notice, Plaintiff's suspension days were changed from November 21, 2005, through December 2,

A hearing before the Administrative Law Judge (ALJ) with regard to Plaintiff's suspension was held on February 21, 2006. The Administrative Law Judge's decision was rendered on April 18, 2006. Said ALJ recommended that the suspension of Plaintiff for ten (10) days without pay during November 23, 2005 through December 7, 2005, period be rescinded. (Exhibit 9 – ALJ Recommendation). It was noted in the recommendation that "This is not a final decision. No rights are finally determined until the Commissioner decides whether to accept, reject, or modify this recommendation." Notwithstanding Mr. Hester's promise on December 13, 2005 – "If the hearing on your appeal of the suspension was not proper, we will change or re-do your evaluation to reflect that decision. Also, if the hearing outcome results in a change in your evaluation that affects step raises, it will be handled in a manner that you would not in any way be penalized." The Commissioner chose not to stand behind the promise made by Mr. Hester by accepting the ALJ recommendation. In fact, the Commissioner took no action whatsoever. He refused to accept, reject, or modify the recommendation.

More than twenty five (25) months have passed since the final hearing and the Commissioner has refused to accept, reject, or modify the ALJ's recommendation. The Commissioner's refusal to act is in retaliation against Plaintiff for appealing her decision and going to the Alabama State Employees Association (ASEA).

The Commissioner's refusal to accept, reject or modify the ALJ's recommendation was not only retaliation against Plaintiff; he also failed to follow

2005, returning December 5, 2005 to November 23, 2005, returning on December 7, 2005. As a result two additional days were added to Plaintiff's suspension. Due to the Defendant's error, Plaintiff served twelve (12) days on suspension and had to be given administrative leave to rectify the mistake.

In the November 22, 2005, letter upholding Plaintiff's suspension, Plaintiff was notified that she would receive a post-suspension review. On November 30, 2005, Plaintiff received her annual appraisal Plaintiff received her appraisal when she was on suspension. Plaintiff's appraisal was decreased from a score of "Exceeds Standard" to a score of " Partially Meets Standards" due to the suspension. Alabama State Personnel states that the employer should not begin the "Progressive Discipline" (Exhibit "7" – Progressive Discipline) two months prior to the employee's evaluation period. The employee should be evaluated during the entire year. Plaintiff's warning, reprimand and suspension all occurred within a two week time frame (11/3-11/15/05). (Exhibit "8" – warning, reprimand and suspension). Plaintiff's evaluation was due in December 2006. The steps that Defendant took were retaliation for Plaintiff appealing her suspension, which is statutorily protected activity.

On December 13, 2005, Plaintiff received a letter from Lance Hester with regard to her appraisal and her pending suspension. In said letter Mr. Hester stated, "If the hearing on your appeal of the suspension was not proper, we will change or re-do your evaluation to reflect that decision. Also, if the hearing outcome results in a change in your evaluation that affects step raises, it will be handled in a manner that you would not in any way be penalized monetarily."

the Defendant's Policy of Progressive Discipline (Exhibit 7). The policy in part states, "Suspension may be appealed in writing to the Commissioner's office within ten (10) days of the notice. Upon appeal, the Commissioner will appoint a panel or hearing officer to review the action. The Commissioner will not be bound by their recommendations. <u>The Commissioner will inform the employee in writing of these findings and his final decision.</u>" The policy clearly <u>requires</u> that the Commissioner inform the employees in writing of his final decision. The Commissioner has violated the Plaintiff's procedural due process rights by not issuing a final decision.

On or about April 10, 2006, the Plaintiff's attorney, Victor R. Spencer, contacted the Defendant and warned the Commissioner about the retaliation that the Plaintiff was being subjected to since she appealed her suspension. Among other things, Plaintiff was being followed by the Commissioner. The attorney's advice was not adhered to.

On June 23, 2006, Plaintiff, among other black employees, complained to the ASEA that Blacks were being discriminated against by Defendant. Plaintiff and her black co-workers discussed the hiring and promoting disparity and the disparity in issuing cars.

On August 4, 2006, Attorney Spencer wrote the Commissioner a letter requesting that he act on the ALJ's recommendations. The Commissioner's non-action was taken in retaliation of Plaintiff's appeal the suspension and her ASEA complaint. On September 20, 2006, Plaintiff reviewed her personnel file. Plaintiff discovered and Teresa Brunson witnessed that some documents were missing

from Plaintiff's file.    This violated Plaintiff's due process rights (Exhibit 10 – Personnel file).    On April 11, 2007, Plaintiff filed a Motion to Enforce the recommendation of the Administrative Law Judge.    Again, the Commissioner refused to act.    The Commissioner continues to retaliate against Plaintiff for participating in statutorily protected activity when she filed her appeal and filed a complaint with ASEA.

## III. ARGUMENTS AND AUTHORITIES

### A. <u>Standard of Review for Summary Judgment</u>

In reviewing a motion for summary judgment, the Court must "review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant." *Kimbrell v. Focras, Inc.,* 2002 WL 31041847 (Ala.Civ.App.).

According to *Burrell v. Runyon, Jr.,* 1996 U.S. Dist. Lexis 8656, "Section 704(a) of Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees... because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."    To establish a prima facie case for discrimination for disparate treatment, the Plaintiff must show that (1) she is a member of a protected class; (2) has engaged in or been accused of engaging in misconduct similar to persons outside of her protected status and (3) similarly situated person received more favorable treatment. *Early v. Morris Newspaper Corp.,* 54 F. Supp. 2d 1261, 1271 (M.D. Ala. 1999) To

establish a prima facie case for retaliation, a Title VII Plaintiff must show that (1) she was engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exits between the protected activity and the adverse employment action.   To establish a claim under 42 U.S.C.S. the Plaintiff must allege that the deprivation by the defendant was when the defendant was acting under the color of law deprived any person on any rights, privileges, or immunities secured by the United States constitution or federal law.

Where there are questions as to whether the alleged conduct complained of exits, a summary judgment is not appropriate.   As per the applicable legal standard for summary judgment, the Plaintiff has presented substantial evidence that a fair-minded person would infer the existence of the fact sought to be proved.   Because of the applicable law, pleadings, depositions and affidavits attached hereto the Defendant has not met the standard of review such that summary judgment is proper.

### PLAINTIFF'S CLAIMS WERE PROPERLY RAISED IN EEOC COMPLAINT

The Defendant mentions six (6) claims that are mentioned in Ms. Burton's Complaint.   Those claims are 1) removal of a refrigerator from her office, 2) removal of a cubicle privacy wall from around her desk, 3) change of job responsibilities, 4) being followed by a member of management while off work, 5) denial of a promotion to the position of agriculture marketing specialist, and (6) retaliation for complaining about her suspension.   In an EEOC charge, the intake

officer only takes in minimal information. Ms. Burton's charge (Exhibit "12" –

EEOC Complaint) states as follows.

> I began my employment with the employer named above as an
> administrative assistant on September 1, 2001. Since on or about
> February 21, 2006, I have been subjected to adverse terms and
> conditions of employment to include my having to remove my
> personal refrigerator from my office, having the privacy wall
> removed from around my desk, having my job duties and
> responsibilities changed to include being giving duties that a White
> female did not want.  I have been followed by a member of
> management while I was off work on annual leave. In August of
> 2006, I was denied a promotion to the position of agriculture
> marketing specialist based on my lack of education, although I have
> a master's degree.  However, a lesser qualified white was selected
> for the position.  I believe that I was discriminated against in
> violation of Title VII of the 1964 Civil Rights Act, as amended
> because of my race, Black and in retaliation to my complaint that I
> was suspended because of my race.

The Defendant states that there is no mention of any alleged

discrimination or retaliation regarding the Commissioner's rejection of the

recommendation of the Administrative Judge.  Plaintiff disagrees.  Plaintiff

properly put the suspension before the EEOC and everything that pertained to

the suspension was a form of discrimination and retaliation.    When

Commissioner improperly suspended Plaintiff was only the beginning of the

discrimination/retaliation.    The refusal to adhere to the Administrative Law

Judge's (ALJ) recommendation. (Exhibit "8" – ALJ Recommendation). The

refusal to take any action on the recommendation was continuing retaliation with

regard to the suspension.

The Plaintiff's claims are not time barred

Plaintiff properly indicated that the actions taken against her were

continuing.  The complaints that Plaintiff brings forth are not discrete acts, they

are continuing. Based on the fact that the discrimination and retaliation against Plaintiff were continuing, Plaintiff had the right to bring all of her complaints of discrimination and retaliation that relate to the timely filed suspension. Since these actions by the Defendant were a continuing violation, Plaintiff is allowed to bring all of her complaints if at least one of her claims falls within the applicable 180 day window. The mention of the suspension in the complaint encompasses everything regarding the suspension up to and including the ultimate non-action of the ALJ's recommendation to withdraw the suspension. Therefore, each charge is timely filed. Ms. Burton was suspended in late November, early December 2005. Though Plaintiff's EEOC Claim was filed on September 2006, when she mentioned the suspension, the initial suspension comes in, because of its continuining nature. The initial suspension was so intricately related until it is clear that it was part of the same act that Plaintiff mentioned in her EEOC Complaint.

## PLAINTIFF HAS MADE VIABLE CAUSES OF ACTION FOR TITLE VII CLAIMS

### Race Discrimination

Plaintiff was suspended based on race discrimination. The Defendant states that Plaintiff did not properly put the suspension before the EEOC, because the actual suspension took place in late November, and early December 2005. Ms. Burton avers that the suspension was a part of the EEOC charge, because the ultimate upholding of the suspension grew out of the initial suspension. The suspension is a continuing act; therefore, when the suspension was raised in the EEOC complaint due to the continuing nature of the

discrimination/retaliation that Plaintiff underwent, the suspension became a part of the EEOC charge.

As previously discussed, where there are questions as to whether the alleged conduct of discrimination in violation of Title VII of the Civil Rights Act of 1964, to establish a prima facie claim of racial discrimination, the following elements must be met: (1) Plaintiff belongs to a racial minority; (2) that he was subjected to an adverse employment action; (3) that Plaintiff was treated less favorably than similarly situated employees who are not members of this minority class   Then, the Defendant must bring forth a legitimate nondiscriminatory reason for the adverse employment treatment.  If this burden is met, the burden then shifts to the Plaintiff to show that the real reason for the adverse action is discrimination.

Racial Minority

In the case before this Honorable Court, Plaintiff is a member of the protected group, as she is black.  Therefore, the first element is met.

Subjected to adverse employment action

Plaintiff was subjected to adverse employment treatment.  Plaintiff was given a written reprimand for voicing her opinion which ultimately ended in a suspension.  Plaintiff's opinion came out of the discussion that Plaintiff had with Mr. Hester regarding the mail that was left unopened while she was on jury duty. The Plaintiff stated that Mr. Hester probably would not remember that she had pointed out the dates to him if the matter came up again.  Mr. Hester took the remark as Plaintiff calling him a liar.  Plaintiff was simply saying that if the matter

came up again he probably would not back her up on the post dates, because he would not remember. Plaintiff had worked directly for Mr. Hester so she was well aware of Mr. Hester's pattern of not recalling details. In fact, Mr. Hester acknowledges that he her a problem with his memory. Mr. Hester even put this fact in writing in a memorandum dated April 11, 2005. (Exhibit "13" – Hester Memo.). In fact, Mr. Hester states in his deposition that Plaintiff typed the memo, so she was quite aware of Mr. Hester's memory. (Exhibit 14- Hester's Deposition, p. 70, lines 16 -23 and p. 71, lines 1- 6). Plaintiff received a written reprimand as a result of the Plaintiff making a statement of opinion with regard to Mr. Hester's memory. As a result, Plaintiff received a written reprimand.

Plaintiff treated less favorably

Plaintiff was ultimately suspended based on race discrimination. She was treated less favorably than Jamie Baxley, white/female. Mrs. Baxley and Plaintiff were similarly situated in that they held the same level of position and their behavior was similar. Plaintiff received different discipline than Jamey Baxley. (Exhibit 5, pp 6 -7). The Defendant further states that because Ms. Baxley was supervised by a different supervisor, she is not a proper comparator. In his deposition, Lance Hester stated that the disciplinary action taken against was due to the personnel rules and the rules of the Department. Therefore, it does not matter who supervised Plaintiff, the discipline should have been the same. Ms. Baxley's conduct was similar to Ms. Burton's (Exhibit 5, pp 6 & 7), but was more confrontational. However, Baxley was not asked to sign a warning she was simply sent home. It is evident that the Defendant dealt Plaintiff differently

than it dealt with Ms. Baxley.  In this instance, Plaintiff was treated differently than Ms. Baxley.  During Ms. Burrton's ALJ hearing this fact was pointed out by a witness, Teresa Smiley.  Ms. Smiley is a deputy commissioner for the Department.

Plaintiff shows that discrimination took place against her when she was issued a written warning.  A written warning is not what Ms. Baxley received.  Ms. Baxley was simply spoken to and sent home for the day.  Ms. Baxley used profane language to her superior, Mr. Rigney.  Mr. Rigney is a deputy commissioner.  The Plaintiff concedes that the Defendant does make a point when it states that the "quality" of the behavior was not the same.  In this instance, Ms. Baxley used disrespectful profanity to her superior and the Plaintiff only voiced her opinion (See Exhibit 5).

The Plaintiff also provides in her affidavit (Exhibit 5, pp. 6-7), with regard to her warning that resulted in a suspension, "The proposed suspension is not consistent with Agriculture's actions in similar circumstances in the past (2004). Example: Jamie Baxley used abusive language toward the Asst. Commissioner Doug Rigney and was told by the Asst. Commissioner to leave his office with that attitude.  Ms. Baxley was sent home for the rest of the day with pay and was not given a written reprimand nor was she suspended.  I got this information from Deputy Commissioner Teresa Smiley what states Charlenthia Canidate heard the abusive language because her office at the time was directly across from Doug Rigney.  I feel like I was treated differently.  Under all the circumstances, does a suspension present a fair and honest reason, regulated by good faith for

an employee's belief, not an accusation?  There were mitigating circumstances which suggest that a less drastic action was appropriate."

The reasons offered by the Defendant for their actions as discussed above are of such a nature that a genuine question exists as to whether or not the reasons given by the Defendant for their actions was intentional discrimination.  As such, Plaintiff has presented a prima facie case for this matter to be submitted for consideration by a jury of his peers.

## PLAINTIFF WAS RETALIATED AGAINST

## PLAINTIFF HAS MET THE LEGAL REQUIREMENTS FOR RETALIATION

### Plaintiff was involved in statutorily protected activity

Plaintiff was involved in statutorily protected activity.  Plaintiff was involved in protected activity when she filed her appeal of her suspension.  Plaintiff also filed a complaint with the Alabama Employees Association in June of 2006.   A hearing was held. Defendant was aware of Plaintiff's participation in statutorily protected activity when she filed her suspension ad her ASEA complaint.

### Plaintiff suffered an adverse employment action

When Plaintiff appealed her suspension and complainred to the ASEA Defendnat began retaliating against her.  Plaintiff complained of her suspension at the ASEA meeting.   Because of the suspension that Plaintiff suffered in November/December 2005, her evaluation and pay increase were affected.  On December 13, 2005, Lance Hester wrote Plaintiff a letter indicating that if the ALJ determined that the suspension was improper, her evaluation would be redone.

(Exhibit 15 – Letter from Hester and Plaintiff's Affidavit, pg. 8). The promise was not if the Commissioner accepted the determination, the promise was only based on the ALJ's findings, not the Commissioner's action on the recommendation. However, Plaintiff's evaluation was not redone and as a result she was not eligible for a raise.

Plaintiff was harmed through the retaliation that she suffered. The Commissioner told Plaintiff that if she did not drop the appeal and give in to the suspension he would make her life miserable and not acting on the ALJ's recommendation was a continuation of the retaliation. The issue of the suspension is properly before the EEOC, so the attached failure to act on the recommendation is also properly before the EEOC. Thus, it is proper for Plaintiff to bring the issue of the Commissioner's failure to act on the ALJ's recommendation in the ensuing lawsuit. Once the ASEA complaint was filed, the promise to re-do Plaintiff's evaluation was reneged upon. Notwithstanding the fact that the ALJ recommended that the suspension be rescinded, the Defendant has refused to redo Plaintiff's evaluation. As a result of the suspension that Plaintiff was subjected to, her evaluation was lowered and she was not eligible for a raise.

Defendant brings forth in its Motion for Summary Judgment a letter of opinion to the Commissioner with regard to the ALJ recommendation from the State of Alabama Personnel Department. (Exhibit "16" – Letter form Jackie Graham, State Personnel Director). This is the first time that Plaintiff has seen this letter. Curiously, the Defendant never brought forth this recommendation. If

the Commissioner wanted to reject the ALJ recommendation, he should have done so.  Instead, the Defendant took no action, which in its silence let's the Plaintiff know that the Defendant places no value on her right to know what its decision was.  The non-action is clearly retaliation.  The Defendant had several opportunities to address the ALJ determination.  First, Attorney Victor R. Spencer, Plaintiff's original attorney, forwarded a letter to Jeff Webb, staff attorney for the Defendant, on April 10, 2006, regarding the Commissioner's retaliation against Plaintiff since the appeal.  (Exhibit "17" – Spence letter dated April 10, 2006).  The ALJ's recommendation was issued on April 16, 2006, six days after Spencer's letter.  The Defendant received its opinion from State Personnel on the recommendation on April 27, 2006, only seventeen days after Attorney Spencer's request, yet Defendant did not respond to Spencer's letter.  The Defendant was in effect showing the Plaintiff who was in control.  The retaliation continued.

Almost four months later, August 4, 2006, Attorney Spencer  wrote Attorney Webb a second letter.  (Exhibit "18" – Spence letter dated August 4, 2006).  This time the letter directly references the ALJ recommendation.  However, the Defendant continues retaliating against Plaintiff with its non-action.  Even though  the Defendant has taken the time to seek the opinion of State Personnel, it still refuses to address the Plaintiff.  On April 11, 2007, the undersigned attorney addressed the ALJ with a Motion to Enforce Recommendation and copied the Defendant. (Exhibit "11").  There was still no action on the Defendant's part, more retaliation.  The Defendant in effect through

its non-action left the Plaintiff with no choice but to file a lawsuit.  The Defendant has conducted itself in a very unbecoming fashion.  The Defendant appears to be asserting its power.  In other words, it is retaliating against Plaintiff.

**Causal Connection**

The Defendant provides in its Motion for Summary Judgment that there is no causal connection between involvement in statutorily protected activity and the suspension and the Defendants failure to act on the ALJ hearing.  The Defendant states that more than five months had passed but, during that five months, Plaintiff was actively working on having the suspension overturned.  Attorney Spencer put the Defendant, Commissioner, on notice regarding the retaliation in April of 2006.  The Defendant received an opinion on the recommendation that same month, but Defendant refused to act on the recommendation.  Clearly, the Commissioner was displeased with the Plaintiff, because of her appeal and complaint with the ASEA.  In fact the retaliation continues to this day.  There is a causal connection between the statutorily protected activity the the Plaintiff was involved in and the disparate treatment she received.

## PLAINTIFF'S DUE PROCESS VIOLATION

The Plaintiff has properly brought her violation of Due process and has sufficientlytriggered 42 U.S.C.S. Sec. 1983.  To maintain a 42 U.S.C.S. Sec. 1983 claim based upon a constitutional violation, "the plaintiffs must allege (1) that the defendants acting under color of law from depriving any person of any rights, privileges, or immunities secured by the United States Constitution or

federal law." *John Does 1,2,3 and 4 v. The Covington County Board, et al.,* 884 F. Supp. 462, 465.

Defendant was acting under the color of law when it denied Plaintiff's Constitutional rights.  Defendant was disciplining Plaintiff, which falls within acting within the color of law.  First, Defendant has a duty to maintain a complete personnel file on Plaintiff.  When Plaintiff inspected her personnel file in September of 2006.  Teresa Brunson indicates that not all documents were in Plaintiff's file on said date. Ms. Brunson signed the personnel file. (Exhibit 10 –

Plaintiff's constitutional rights were infringed upon when Plaintiff was given notice of her suspension hearing before the Commissioner at 4:45 p.m. on November 17, 2005, indicating the Plaintiff's suspension hearing would be held on November 18, 2005, at 10:30 a.m.  The Plaintiff was not given adequate time to prepare for hearing. (Exhibit 5, p. 6).

Plaintiff's constitutional rights were also abridged because the Defendant did not comply with the relevant portions of State Personnel policies before it gave Plaintiff a written warning as it is stated in the Orientation Manual for Merit System Employees. (Exhibit 19 – Orientation Manual, p. 52, Exhibit 5, p.4).  The totality of the Plaintiff's history should have been taken into consideration. Plaintiff had no prior disciplinary actions and all of Plaintiff's evaluations since 1999 were "Exceeds Standard. (Exhibit 20 – Evaluations).

The ALJ recommended that Plaintiff's suspension be rescinded.     The Policy of Progressive Discipline (Exhibit 7 – Progressive discipline)  The policy in part states, "Suspension may be appealed in writing to the Commissioner's office

within ten (10) days of the notice. Upon appeal, the Commissioner will appoint a panel or hearing officer to review the action. The Commissioner will not be bound by their recommendations. <u>The Commissioner will inform the employee in writing of these findings and his final decision.</u>" The policy clearly <u>requires</u> that the Commissioner inform the employees in writing of his final decision. The Commissioner has violated the Plaintiff's procedural due process rights by not issuing a final decision. Clearly, the Plaintiff's constitutional rights have been violated.

In the suspension hearing the Commissioner did not inform Plaintiff of his decision. The Commissioner advised the Plaintiff in the hearing that he would as per policy inform her of his decision by the end of the day. (Exhibit 21 – Suspension Recording). When the Commissioner failed to follow the proper procedures, he violated the Plaintiff's constitutional rights.

<u>**CONCLUSION**</u>

The evidence presented by Plaintiff as to being discriminated against retaliated against due to her involvement in statutorily protected activity and the Defendant's knowledge of said participation are certainly at issue, and due process violations are questions that should be decided by a jury of Plaintiff's peers.

Based on the facts, caselaw and evidence that is in direct dispute to Defendant's claims; there is a genuine issue of material fact to be submitted to the jury. Where there are questions, the case must go to trier of fact.

**WHEREFORE PREMISIES** considered, Plaintiff request that this Honorable Court deny Defendant' request for summary judgment.

Respectfully submitted this the 30th day of May 2008.

_____
JURALDINE BATTLE-HODGE (BAT033
Attorney for Plaintiff

LAW OFFICES OF JURALDINE BATTLE-HODGE
207 Montgomery Street, Suite 215
Montgomery, Alabama 36104
Telephone:  (334) 262-1177, 263-5575
Facsimile:  (334) 263-5569

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May 2008, the foregoing document was served upon the following counsels of record by placing a copy of the same in the U.S. Mail, First Class postage prepaid, addressed as follows:

Hon. Emily C. Marks
Hon. E. Hamilton Wilson, Jr.
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, AL 36102-2148

_____
Of Counsel