IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SHANNON BURTON )
)
    Plaintiff, )
)
v. )    Case No.:    2:07cv548-MHT
)
ALABAMA DEPARTMENT OF )
AGRICULTURE & INDUSTRIES )
)
    Defendant. )

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held on this case on August 11, 2008, wherein the following proceedings were held and actions taken:

    1.    **PARTIES AND TRIAL COUNSEL:** The parties before the court are correctly named as set out below; and the designated trial counsel for the parties are as set out below:

**PARTIES**    **TRIAL COUNSEL**

    **Plaintiff: Shannon Burton**    Juraldine Battle-Hodge
    (Law Offices of Juraldine Battle-Hodge)

    **Defendant: Alabama Department**    E. Hamilton Wilson
    **of Agriculture & Industries**    Emily C. Marks
    (Ball, Ball, Matthews & Novak, P.A.)

**COUNSEL APPEARING AT PRETRIAL HEARING:**

    For plaintiff:    Juraldine Battle-Hodge
    (Law Offices of Juraldine Battle-Hodge)

    For defendant:    E. Hamilton Wilson
    Emily C. Marks
    (Ball, Ball, Matthews & Novak, P.A.)

    **2.**    <u>**JURISDICTION AND VENUE:**</u>  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(a)(3). The plaintiff is employed within Montgomery County, Alabama, and the Defendant does business within Montgomery County.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  Personal jurisdiction is not contested.

    **3.**    <u>**PLEADINGS:**</u> The following pleadings and amendments were allowed: Complaint and Amended Complaint by the plaintiff; Answer to Complaint and Answer to Amended Complaint by Defendant.

    **4.**    <u>**CONTENTIONS OF THE PARTIES:**</u>

    **(a)**    **The Plaintiff:**

**(1)** <u>**Statement of the Plaintiff**</u>

(3) **Plaintiff is a black female over the age of nineteen (19). Plaintiff began working for the Alabama Department of Agriculture & Industries (Defendant) in September of 2001. Benny Hitch was Plaintiff's immediate supervisor. Lance Hester was Plaintiff's immediate supervisor in April 2006. Plaintiff is an ASA III.**

(2)

(3) Plaintiff served on jury duty from October 24, 2005 through October 28, 2005.  Plaintiff returned to work on October 31, 2005.  Upon returning to work, Plaintiff discovered mail in her chair and on her desk that had not been opened the entire week she was on jury duty.

(4)

(5) The failure to open the mail was a major concern to Plaintiff due to the sensitive nature of the mail.  Many of the pieces of mail were date sensitive and required immediate attention.  Plaintiff proceeded to Lance Hester's (Program Director) Office. Mr. Hester was the Plaintiff's supervisor. The Plaintiff asked Mr. Hester, "Are you aware that the mail has not been opened for an entire week?"  Mr. Hester responded, "I was under the assumption that Mary Catrett was opening the mail."  Plaintiff responded to Mr. Hester that that had not happened.  Ms. Catrett was on leave from October 24, 2005 to October 25, 2005 (two of the five days that Plaintiff was on jury duty).  However, she was at work for the three remaining days.

(6)

(7) Plaintiff asked Mr. Hester if he would like to look at the postmark dates on the mail. Mr. Hester told Plaintiff that that was not necessary, but if it would make her happy, he would.  Plaintiff explained to Mr. Hester that his

**looking at the mail was not about making her happy; it was about the productivity of the office.**

**(8)**

**(9) Plaintiff then stated to Mr. Hester that if she had left the mail unopened for an entire week, a "federal" case would have been made out of the situation. At that time, Plaintiff realized that Mr. Hester had another appointment. Before Plaintiff left Mr. Hester's office she commented, "It does not matter anyway because if this incident ever comes up again about the mail being opened, you probably would not remember I told you about the postmark dates on the mail of every day of the week and would probably not tell the truth about the dates." Plaintiff then left Mr. Hester's office.**

**(10)**

**(11)      Mr. Hester only met with his appointment for approximately ten (10) minutes. He then came to the Plaintiff's desk and stated, "I have a question regarding the last comment you made." Plaintiff then asked Mr. Hester what he would like to know. Mr. Hester asked, "Do you honestly believe that I would not tell the truth about the postmark dates on the mail even if I looked at the mail?" Plaintiff answered, "Yes, I honestly believe that you would not tell the truth." This was Plaintiff's belief, not an accusation.**

**(12)**

**(13)      At that time Mr. Hester asked the Plaintiff to come to his office to see how they could move pass this. Plaintiff agreed. Plaintiff and Mr. Hester spoke for approximately 45 minutes. At no time did Mr. Hester indicate that Plaintiff had a demeanor of insubordination, showed lack of respect for his position, or indicated that Plaintiff's statement demonstrated a failure to submit to authority. To Plaintiff's surprise, there was no future discussion about the unopened mail. Mr. Hester was totally focused on Plaintiff's statement of her opinion.**

**(14)**

**(15)      On November 3, 2005, Lance Hester issued a written reprimand and warning to the Plaintiff for her statement of opinion. He indicated in the warning that Plaintiff's behavior was so severe that it warranted immediate attention. He directed Plaintiff to write a response after signing the warning. Plaintiff was instructed to admit to disruptive behavior, insubordination, and failure to submit to authority. She was further directed to admit such behavior in the future would result in a reprimand and disciplinary action. Plaintiff did not initially sign this warning.**

**(16)**

**(17)      As a result, Plaintiff was issued a second written reprimand and warning and instructed that failure to sign the letter of reprimand and warning would lead to further disciplinary action. Plaintiff signed the warning on November 14, 2005. On November 15, 2005, Plaintiff received a letter of suspension. The letter of suspension was a result of Ron Sparks, Commissioner, upholding Mr. Hester's recommendation. The Plaintiff was**

suspended from November 21, 2005, through December 2, 2005 at 8:00 a.m. The disciplinary action that Plaintiff was subjected to was extremely severe and did not fit the allegations.

(18)

(19) Plaintiff appealed the suspension on November 18, 2005. Ron Sparks, the Commissioner, immediately began retaliating against the Plaintiff once she filed an appeal. On the same day that the Plaintiff filed her appeal, the Commissioner instructed the maintenance workers and prison inmates to tear down the Plaintiff's cubicle. The cubicle had been in Plaintiff's office for almost a year and there was no mention that the cubicle was a problem. There was no reason to tear the cubicle down other than to send Plaintiff a message that he, the Commissioner, was in control. Plaintiff's computer and other work equipment were simply left on the floor. The office was left in complete disorder.

(20)

(21) In Plaintiff's appeal she indicated that the Defendant did not give her reasonable amount of notice for the hearing. Plaintiff was given the notice of the hearing at 4:45 p.m. on November 17, 2005, indicating that her suspension hearing would be held on November 18, 2005 at 10:30 a.m. This was clearly a violation of the Plaintiff's procedural due process rights under the Constitution of the United States of America.

(22)

(23) Per the Plaintiff's suspension orders, Plaintiff began serving her suspension on November 21, 2005. On November 22, 2005, the Defendant, Commissioner Sparks, upheld the suspension. In this notice, Plaintiff's suspension days were changed from November 21, 2005, through December 2, 2005, returning December 5, 2005, to November 23, 2005, returning on December 7, 2005. As a result two additional days were added to Plaintiff's days on suspension. Due to the Defendant's error, Plaintiff served twelve (12) days on suspension and had to be given administrative leave to rectify the mistake.

(24)

(25) In the November 22, 2005, letter upholding Plaintiff's suspension, Plaintiff was notified that she would receive a post-suspension review. On November 30, 2005, Plaintiff received her annual appraisal she was on suspension. Plaintiff's appraisal was decreased from a score of "Exceeds Standards" to a score of "Partially Meets Standards" due to the suspension. Alabama State Personnel states that the employer should not begin the "Progressive Discipline" two months prior to the employee's evaluation period. The employee should be evaluated during the entire year. Plaintiff's warning, reprimand, and suspension all occurred within a two week time frame. Plaintiff's evaluation was due in December 2006. The steps that Defendant took were retaliation for Plaintiff appealing her suspension, which is statutorily protected activity.

**(26)**

**(27)** On December 13, 2005, Plaintiff received a letter from Lance Hester with regard to her appraisal and her pending suspension. In said letter Mr. Hester stated, "If the hearing on your appeal of the suspension was not proper, we will change or re-do your evaluation to reflect that decision. Also, if the hearing outcome results in a change in your evaluation that affects step raises, it will be handled in a manner that you would not be penalized monetarily."

**(28)**

**(29)** A hearing before the Administrative Law Judge (ALJ) with regard to Plaintiff's suspension was held on February 21, 2006. The Administrative Law Judge's decision was rendered on April 18, 2006. Said ALJ recommended that the suspension of Plaintiff for ten (10) days without pay during November 23, 2005 through December 7, 2005, period be rescinded. It was noted in the recommendation that "This id not a final decision. No rights are finally determined until the Commissioner decides whether to accept, reject, or modify this recommendation." Notwithstanding Mr. Hester's promise on December 13, 2005- "If the hearing on your appeal of the suspension was not proper, we will change or re-do your evaluation to reflect that decision. Also, if the hearing outcome results in a change in your evaluation that affects step raises, it will be handled in a manner that you would not in any way be penalized." The Commissioner chose not to stand behind the promise made by Mr. Hester by accepting the ALJ recommendation. In fact, the Commissioner took no action whatsoever. He refused to accept, reject, or modify the recommendation.

**(30)**

**(31)** More than thirty (30) months have passed since the final hearing and the Commissioner has refused to accept, reject, or modify the ALJ's recommendation. The Commissioner's refusal to act is in retaliation against Plaintiff for appealing her suspension and going to the Alabama State Employees Association (ASEA).

**(32)**

**(33)** The Commissioner's refusal to accept, reject, or modify the ALJ's recommendation was not only retaliation against Plaintiff; he also failed to follow the Defendant's Policy of Progressive Discipline. The policy in part states, "Suspension may be appealed in writing to the Commissioner's office within ten (10) days of the notice. Upon appeal, the Commissioner will appoint a panel or hearing officer to review the action. The Commissioner will not be bound by their recommendations. <u>The Commissioner will inform the employee in writing of theses findings and his final decision.</u>" The policy clearly requires that the Commissioner inform the employees in writing of his final decision. The Commissioner has violated the Plaintiff's procedural due process rights by not issuing a final decision.

**(34)**

(35)     On or about April 10, 2006, the Plaintiff's attorney, Victor R. Spencer, contacted the Defendant and warned the Commissioner about the retaliation that the Plaintiff was being subjected to since she appealed her suspension. Among other things, Plaintiff was being followed by the Commissioner. The attorney's advice was not adhered to.

(36)

(37)     On June 23, 2006, Plaintiff, among other black employees, complained to the ASEA that blacks were being discriminated against by the Defendant. Plaintiff and her black co-workers discussed the hiring and promoting disparity and the disparity in issuing cars.

(38)

(39)     On August 4, 2006, Attorney Spencer wrote the Commissioner a letter requesting that he act on the ALJ recommendations. The Commissioner's non-action was taken in retaliation of Plaintiff's appeal to her suspension and her ASEA complaint. On September 20, 2006, Plaintiff reviewed her personnel file. Plaintiff discovered and Teresa Brunson witnessed that some documents were missing from the Plaintiff's file. This violated Plaintiff's procedural due process rights. On April 11, 2007, Plaintiff filed a Motion to Enforce the recommendation of the Administrative Law Judge. Again, the Commissioner refused to act. The Commissioner continues to retaliate against Plaintiff for participating in statutorily protected activity when she filed her appeal and filed a complaint with the ASEA.

(40)

(41)     **Plaintiff's Claims Were Properly Raised in EEOC Complaint**

(42)

(43)     The Defendant states that there is no mention of any alleged discrimination or retaliation

(44)     regarding the Commissioner's rejection of the recommendation of the Administrative Law Judge. Plaintiff disagrees. Plaintiff properly put the suspension before the EEOC and everything that pertained to the suspension was a form of discrimination and retaliation. When the Commissioner improperly suspended Plaintiff was only the beginning of the retaliation/discrimination. The refusal by the Commissioner to take any action on the ALJ's recommendation was continuing retaliation with regard to the suspension.

(45)

(46)     **Plaintiff's Claims Are Not Time Barred**

(47)

(48)     Plaintiff properly indicated that the actions taken against her were continuing. Based on

(49)     the fact that the discrimination and retaliation against Plaintiff were continuing, Plaintiff had the right to bring all of her complaints of discrimination and retaliation that relate to the timely filed complaint

regarding Plaintiff's suspension. Since these actions by the Defendant were a continuing violation, Plaintiff is allowed to bring all of her complaints if at least one of her claims falls within the applicable 180 day window. The mention of the suspension in the complaint encompasses everything regarding the suspension up to and including the ultimate non-action on the ALJ's recommendation to withdraw the suspension. Therefore, each charge is timely filed. The Plaintiff was suspended in late November, early December 2005. Though Plaintiff's EEOC claim was filed on September 2006, when she mentioned the suspension, the initial suspension comes in, because of its continuing nature. The initial suspension was so intricately related until it is clear that it was a part of the same act that the Plaintiff referenced in her EEOC Complaint.

(50)
(51)     **Plaintiff Has Established a Prima Facie Case for Race Discrimination**
(52)
(53)     To establish a prima facie claim for racial discrimination, the following elements must be
(54)     Met: (1) plaintiff belongs to a racial minority; (2) that he was subjected to an adverse employment action, and (3) that Plaintiff was treated less favorably than similarly situated employees who are not members of this minority class. Then, the Defendant must bring forth a legitimate nondiscriminatory reason for the adverse employment treatment. If this burden is met, the burden then shifts to the Plaintiff to show that the real reason for the adverse action is discrimination.
(55)

(i)     **Racial minority**
(ii)
(iii)    In the case before this Honorable Court, Plaintiff is a member of the protected group, as
(iv)    she is black. Therefore, the first element is met.
(v)
(vi)    **Subjected to adverse employment action**
(vii)
(viii)   Plaintiff was subjected to adverse employment treatment when she was given a
(ix)    written reprimand for voicing her opinion, which ultimately ended in a suspension. Plaintiff's opinion came out of the discussion that Plaintiff had with Mr. Hester regarding the mail that was left unopened while Plaintiff was on jury duty. The Plaintiff stated that Mr. Hester probably would not remember that she had pointed out the dates to him if the matter came up again. Mr. Hester accused the Plaintiff of calling him a liar. The Plaintiff was simply saying that if the matter came up again he probably would not back her up on

        the post dates, because Mr. Hester would not remember. Plaintiff had worked directly for Mr. Hester so she was well aware of Mr. Hester's pattern of not recalling details. In fact, Mr. Hester acknowledges that he has a problem with his memory. Mr. Hester even stated this in a written memorandum dated April 11, 2005. In fact, Mr. Hester states in his deposition that Plaintiff typed the memo, so she was quite aware of Mr. Hester's memory. Plaintiff received a written reprimand for voicing her opinion. As a result, Plaintiff was subjected to an adverse employment action.

(x)

(xi) **<u>Plaintiff was treated less favorably</u>**

(xii)

(xiii) Plaintiff was ultimately suspended based on race discrimination. She was treated less

(xiv) favorably than Jamie Baxley, white/female. Mrs. Baxley and Plaintiff were similarly situated in that they held the same level of position and their behavior was similar. Plaintiff received different discipline than Jamie Baxley. The Defendant states that because Ms. Baxley was supervised by a different supervisor, she is not a proper comparator. In his deposition, Lance Hester stated that the disciplinary action taken against Plaintiff was due to the personnel rules and the rules of the Department. Therefore, it does not matter who supervised Plaintiff, the discipline should have been the same. Ms. Baxley's conduct was similar to Plaintiff's, but was more confrontational. However, Baxley was not asked to sign a warning, she was simply sent home. It is evident that Defendant dealt with Plaintiff differently than it dealt with Ms. Baxley. During Plaintiff's ALJ hearing this fact was pointed out by a witness, Teresa Smiley. Ms. Smiley is a deputy commissioner for the Defendants.

(xv)

(xvi)       Plaintiff shows that discrimination took place against her when she was issued a written warning. A written warning is not what Ms. Baxley received. Ms. Baxley was simply spoken to and sent home for the day. Ms. Baxley used profane language to her superior, Mr. Rigney. Mr. Rigney is a deputy commissioner. The Plaintiff concedes that the Defendant does make a point when it states that the "quality" of the behavior was not the same. In this instance, Ms. Baxley used disrespectful profanity to her superior and the Plaintiff only voiced her opinion.

(xvii)

**8**

  **(xviii)**   The Plaintiff provides in her affidavit with regard to her warning that resulted in a suspension, "The proposed suspension is not consistent with Agriculture's actions in similar circumstances in the past (2004). Example: Jamie Baxley used abusive language toward Asst. Commissioner to leave his office with that attitude. Ms. Baxley was sent home for the rest of the day with pay and was not given a written reprimand nor was she suspended. I go this information from Deputy Commissioner Teresa Smiley who states Charlenthia Candidate heard the abusive language because her office at the time was directly across from Doug Rigney. I feel like I was treated differently. Under all the circumstances, does a suspension present a fair and hones reason, regulated by good faith for an employee's belief, not an accusation? There were migrating circumstances which suggest that a less drastic action was appropriate."

  **(xix)**

  **(xx)**   The reasons offered by the Defendant for their actions as discussed above are of such a nature that a genuine question exists as to whether or not the reasons given by the Defendant for their actions was intentional discrimination. As such, Plaintiff has presented a prima facie case for this matter to be submitted for consideration by a jury of his peers.

  **(xxi)**

     **(xxii)**

**(23)**  **PLAINTIFF HAS MET THE LEGAL REQUIREMENTS FOR RETALIATION**

 **(24)**

i. **Plaintiff was involved in a statutorily protected activity**

ii.

iii. **Plaintiff was involved in a statutorily protected activity. Plaintiff was involved in protected activity when she filed her appeal of her suspension. Plaintiff also filed a complaint with the Alabama Employees Association in June of 2006. A hearing was held. Defendant was aware of Plaintiff's participation in statutorily protected activity when she filed her suspension ad her ASEA complaint.**

iv.

v. **Plaintiff suffered an adverse employment action**

vi.

vii. **When Plaintiff appealed her suspension and complained to the ASEA Defendant began retaliating against her. Plaintiff complained and her suspension at the ASEA meeting. Because of the suspension that Plaintiff suffered in November/December 2005, her evaluation and pay increase were affected. On December 13, 2005, Lance Hester wrote Plaintiff a letter indicating that if the ALJ determined that the suspension was improper, her evaluation would be redone. The promise was not**

        if the Commissioner accepted the determination, the promise was only based on the ALJ's findings, not the Commissioner's action on the recommendation. However, Plaintiff's evaluation was not redone and as a result she was not eligible for a raise.

viii.

ix.       Plaintiff was harmed through the retaliation that she suffered. The Commissioner told Plaintiff that if she did not drop the appeal and give in to the suspension he would make her life miserable and not acing on the ALJ's recommendation was a continuation of the retaliation. The issue of the suspension is properly before the EEOC, so the attached failure to act on the recommendation is also properly before the EEOC. Thus, it is proper for Plaintiff to bring the issue of the Commissioner's failure to act on the ALJ's recommendation in the ensuing lawsuit. Once the ASEA complaint was filed, the promise to redo Plaintiff's evaluation was reneged upon. Notwithstanding the fact that the ALJ recommended that the suspension be rescinded, the Defendant has refused to redo Plaintiff's evaluation. As a result of the suspension that Plaintiff was subjected to, her evaluation was lowered and she was not eligible for a raise.

x.

xi.       Defendant brings forth in its Motion for Summary Judgment a letter of opinion to the Commissioner with regard to the ALJ recommendation from the State of Alabama Personnel Department. This is the first time that Plaintiff has seen this letter. Curiously, the Defendant never brought forth this recommendation, he should have done so. Instead, the Defendant took no action, which in its silence let's the Plaintiff know that the Defendant places no value on her right to know what its decision was. The non-action is clearly retaliation. The Defendant had several opportunities to address the ALJ's determination. First, Attorney Victor R. Spencer, Plaintiff's original attorney, forwarded the letter to Jeff Webb, staff attorney for the Defendant, on April 10, 2006, regarding the Commissioner's retaliation against Plaintiff since the appeal. The ALJ's recommendation was issued on April 16, 2006, six days after Spencer's letter. The Defendant received its opinion from State Personnel on the recommendation on April 27, 2006, only seventeen days after Attorney Spencer's request, yet Defendant did not respond to Spencer's letter. The Defendant was in effect showing the Plaintiff who was in control. The retaliation continued.

xii.

xiii.       Almost four months later, August 4, 2006, Attorney Spencer wrote Attorney Webb a second letter. This time the letter directly referenced the ALJ recommendation. However, the Defendant continues retaliating against Plaintiff with its non-action. Even though the Defendant has taken the time to seek the opinion of State Personnel, it still refuses to address the Plaintiff. ON April 11, 2007, the undersigned attorney addressed the ALJ with a Motion to Enforce Recommendation and copied the Defendant. There was still no action on the Defendant's part, more retaliation. The Defendant in effect through its non-action left eh Plaintiff with no choice but to file a lawsuit. The Defendant has conducted

itself in a very unbecoming fashion. The Defendant appears to be asserting its power. In other words, it is retaliating against Plaintiff.

xiv.
xv. **Causal Connection**
xvi.
xvii. **The Defendant provides in its Motion for Summary Judgment that there is no causal connection between involvement in statutorily protected activity and the suspension and the Defendants failure to act on the ALJ hearing. The Defendant states that more than five months had passed but, during those five months Plaintiff was actively working on having the suspension overturned. Attorney Spencer put the Defendant, Commissioner, on notice regarding the retaliating in April of 2006. The Defendant received an opinion on the recommendation that same month, but Defendant refused act on the recommendation. Clearly, the Commissioner was displeased with the Plaintiff, because of her appeal and complaint with the ASEA. In fact the retaliation continues to this day. There is a casual connection between the statutorily protected activity the Plaintiff was involved in and the disparate treatment she received.**
xviii.
xix.
xx.
xxi.

(22)    **PLAINTIFF'S DUE PROCESS VIOLATION**
(23)
(24)    **The Plaintiff has properly brought her violation of Due Process and has sufficiently**
(25)    **triggered 42 U.S.C.S. Sec. 1983. TO maintain a 42 U.S.C.C. Sec. 1983 claim based upon a constitutional violation, "the plaintiffs must allege (1) that the defendants acting under the color of the law from depriving any person of any rights, privileges, or immunities secured by the United States Constitution or federal law." John Does 1,2, 3, and v. The Covington County Board, et al., 884 F. Supp. 462, 465.**
(26)
(27)    **Defendant was acting under the color of law when it denied Plaintiff's Constitutional rights. Defendant was disciplining Plaintiff, which falls within acting within the color of law. First, Defendant has a duty to maintain a complete personnel file on Plaintiff. When Plaintiff inspected her personnel file in September of 2006. Teresa Brunson indicated that not all documents were in Plaintiff's on said date. Ms. Brunson signed the personnel file.**
(28)
(29)    **Plaintiff's constitutional rights were infringed upon when Plaintiff was given notice of her suspension hearing before the Commissioner at 4:45 p.m. on November 17, 2005, at 10:30 a.m. The Plaintiff was not given adequate time to prepare for hearing.**

**11**

(30)

(31)     Plaintiff's constitutional rights were also abridged because the Defendant did not comply with the relevant portions of the State Personnel policies before it gave Plaintiff a written warning as it is stated in the Orientation Manual for Merit System Employees.  The totality of the Plaintiff's history should have been taken into consideration.  Plaintiff had no prior disciplinary actions and all of Plaintiff's evaluations since 1999 were "Exceeds Standard."

(32)

(33)     The ALJ recommended that Plaintiff's suspension be rescinded.  The Policy of Progressive Discipline in part states, "Suspension may be appealed in writing to the Commissioner's office within ten (10) days of the notice.  Upon appeal, the Commissioner will appoint a panel or hearing officer to review the action.  The Commissioner will not be bound by their recommendations.  <u>The Commissioner will inform the employee in writing of these findings and his final decision.</u>"  The policy clearly requires that the Commissioner inform the employees in writing of this final decision.  The Commissioner has violated the Plaintiff's procedural due process rights by not issuing final decision.  Clearly, the Plaintiff's constitutional rights have been violated.

(34)

(35)     In the suspension hearing the Commissioner did not inform the Plaintiff of his decision.  The Commissioner advised the Plaintiff in the hearing that he would as per policy inform her of his decision by the end of the day.  When the Commissioner failed to follow the proper procedures, he violated the Plaintiff's constitutional rights.

(36)

(37) <u>RELIEF SOUGHT</u>

(38)

(39)     The Plaintiff requests the following relief:

(40)

i.   A judgment declaring that Defendant violated 28 U.S.C. Sec. 1331, 42 U.S.C. 200(e), et seq. and Retaliation and Due Process;

ii.

iii.  All back pay and fringe benefits as s result of the 10 day suspension which includes the Plaintiff would have received during the wrongful suspension;

iv.

v.   Attorney's fees for Attorney Victor Spencer and Attorney Juraldine Battle-Hodge;

vi.

vii. All suspension information removed from the Plaintiff's personnel file at Agriculture and Industries and Alabama State Personnel;

      viii.
      ix.     Costs;
      x.
      xi.     Prejudgment interest;
      xii.
      xiii.    An award of such compensatory damages for any loss wages, and loss of benefits, including, but not limited to, retirement pension benefits, mental anguish, emotional distress, and embarrassment, both past, present, and future to which the Plaintiff may be entitled; and such further, other and different legal or equitable relief as the Court may deem appropriate or which she may be entitled, and
      xiv.
      xv.     Punitive damages.
      xvi.
      xvii.

**(b)  The Defendant:**

This is an action for relief under 42 U.S.C. §2000e, <u>et seq.</u>, (Title VII) for claims of race discrimination and retaliation. The plaintiff also purports to bring a procedural due process claim under the Fourteenth Amendment to the United States Constitution. The plaintiff is currently employed by the Defendant, Alabama Department of Agriculture as an Administrative Support Assistant III. She alleges that the defendant discriminated against her on the basis of her race, retaliated against her, and violated her due process rights under the Fourteenth Amendment to the United States Constitution.

Ms. Burton contends she was discriminated against when she was suspended in November/December 2005 for insubordination. The plaintiff also claims she was retaliated against after she appealed her suspension and complained to the Alabama State Employees Association (ASEA) about alleged discrimination. Further, the plaintiff claims that her procedural due process rights were violated because she claims to have received insufficient notice of a pre-suspension hearing. The Alabama Department of Agriculture & Industries denies all of the Plaintiff's allegations and submits that it engaged in legitimate, nondiscriminatory, non-retaliatory employment practices. The Department of Agriculture further denies that it violated the Plaintiff's procedural due process rights.

The plaintiff's claims in her judicial complaint are limited to those alleged acts of discrimination contained in her EEOC charge. The only claims that are common to both the EEOC complaint and the judicial complaint are: 1) removal of a refrigerator from her office, 2) removal of a cubicle privacy wall from around her desk, 3) being followed by a member of management while off work, and 4) retaliation for complaining about her suspension. Any other claims made by the plaintiff in her judicial complaints are barred for plaintiff's failure to include them in her EEOC Charge. None of the claims brought by the plaintiff in her judicial complaint are reasonably related to charges mentioned in the EEOC Complaint or ones which reasonably grew out of the existing charges.To the extent that Ms. Burton makes claims for race discrimination or retaliation for events prior to March 31, 2006, they are barred for failure of the plaintiff to file her charge within 180 days of the discriminatory act. Ms. Burton filed an EEOC Charge of Discrimination on September 27, 2006. This Court may only consider discrete acts that occurred between March 31, 2006 and September 27, 2006 (180 days before September 27, 2006). 42 USC § 2000 e – (5)(e)(1) (charge shall be filed within 180 days after the alleged unlawful employment practice occurred.). Accordingly, any alleged discriminatory conduct that occurred prior to March 31, 2006 is time-barred. The plaintiff seems to claim that she was improperly suspended because of her race in violation of Title VII. However, Ms. Burton was suspended in November/December, 2005, well outside the 180 day time frame prior to the filing of her EEOC complaint. Accordingly, Ms. Burton's race discrimination claim is barred. The plaintiff further cannot establish that she was improperly suspended because of her race. The plaintiff offers no evidence of a similarly situated employee who was engaged in similar conduct but received different discipline. The plaintiff's suspension resulted from continued insubordination in refusing to sign an acknowledgement of receipt of written discipline after repeated directives to do so by her supervisors. The Plaintiff's refusal to sign her written warning acknowledging discussion and receipt of that document which was to placed in her personnel file was a violation of departmental regulations and exposed the Department of Agriculture to allegations of violation of the statute requiring that she receive a copy of that warning (Ala.Code § 36-26-27.1 (1975)). The plaintiff cannot establish a prima facie case of failure to promote to a position in any alleged nutrition program. Any such claim is barred for her failure to include it in her EEOC charge. Further, the plaintiff cannot establish that she applied for and was qualified for a position in any alleged nutrition program or that any such position was filled by an individual outside her protected class.

Plaintiff cannot establish that any of the legitimate, non-discriminatory

reasons articulated by the Defendant for its conduct are pretextual.   The plaintiff makes six claims of retaliation:  1) Mr. Hester's removal of her supervisory responsibilities in May, 2005, 2) Mr. Hester's reduction of her performance appraisal score after her November, 2005 suspension, 3) removal of the privacy wall from her office on November 18, 2005, 4) removal of the refrigerator from her office on March 27, 2006, 5) Commissioner Sparks' alleged failure to act on the recommendation of the ALJ, and 6) Commissioner Sparks allegedly following the plaintiff.  Ms. Burton's claims regarding removal of supervisory responsibilities, reduction of her performance appraisal score, and failure to act on the ALJ's recommendation were not mentioned at all in her EEOC charge.  Further, her claims of removal of supervisory responsibilities, reduction of her performance appraisal score, removal of the privacy wall, removal of the refrigerator, and being followed were not timely raised in plaintiff's EEOC complaint because they did not occur between March 31, 2006 and September 27, 2006.    The plaintiff cannot establish a prima facie case of retaliation under Title VII.  Ms. Burton fails to establish that she suffered an adverse employment action.  There is no causal connection between any protected conduct and any alleged adverse employment action taken against Ms. Burton.  Defendant has legitimate non-discriminatory, non-retaliatory reasons for its actions.  Plaintiff further cannot establish that the Defendant's non-discriminatory and/or non-retaliatory reasons for its actions are pretext for retaliation. The plaintiff cannot establish that any of her constitutional rights have been violated.  The plaintiff received the due process to which she was entitled under Alabama law and pursuant to the U.S. Constitution, thus, her claim of a procedural due process violation must fail.  Defendant contends that Plaintiff has not suffered any damages and is not, therefore, entitled to a verdict in her favor for damages or declaratory relief.

Defendant adopts and incorporates all defenses raised in its Answer, and Answer to the Amended Complaint, as if set forth more fully herein.

18.    **STIPULATIONS BY AND BETWEEN THE PARTIES:**

(a)    Plaintiff began employment with the Alabama Department of Agriculture & Industries in September 2001.

(b)    Plaintiff was suspended for ten (10) days without pay from November 23, 2005 through December 6, 2005.

15

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last 2 1/2 days, are set for September 8, 2008 at 10:00 a.m. at the Frank M. Johnson, Jr. United States Courthouse Complex, Courtroom 2FMJ, One Church Street, Montgomery, Alabama;

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, the jurors, and the judge to each have a set of the exhibits;

(4) The parties in this case are not required to file trial briefs.  However, if they wish to do so, their trial briefs shall be filed no later than September 3, 2008;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. No. 9) entered by the court on August 13, 2007; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by Order of the court.

DONE, this the 11th day of August, 2008.

    /s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**